**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MobilizeGreen, Inc..<br>1200 18th Street, NW, #700<br>Washington, DC 20036<br><br>Leah Allen<br>1200 18th Street, NW, #700<br>Washington, DC 20036<br><br>          Plaintiffs,<br>v.<br><br>The Community Foundation for the<br>National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Terri Lee Freeman, in her capacity as President<br>of The Community Foundation for the<br>National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Mark B. Hansen, in his capacity as the Chief<br>Financial Officer of The Community Foundation<br>for the National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Angela Jones Hackley, in her capacity as Vice<br>President of Philanthropic Services of<br>The Community Foundation for the<br>National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Adrienne Brown, individually and in her capacity<br>as Director of Finance & Accounting of<br>The Community Foundation for the<br>National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>          Defendants. | Case No. 1:14-cv-01698 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442(a)(1) and 1446, Defendants The Community Foundation for the National Capital Region, Terri Lee Freeman, Mark B. Hansen, Angela Jones Hackley and Adrienne Brown (collectively, "CFNCR") hereby remove to this Court the above-captioned action from the Superior Court for the District of Columbia.[1] In the Superior Court, the case is styled *MobilizeGreen, Inc., et al. v. The Community Foundation for the National Capital Region, et al.*, Case No. 14 CA 005764 B (the "State Court Action").

In support of removal, CFNCR states as follows:

### INTRODUCTION

1. This suit is about the administration of a federal grant from the United States Forest Service. Under the grant, the sole grantee, CFNCR, disbursed federal funds to Plaintiff MobilizeGreen, Inc., its subgrantee. Together with founder Leah Allen, MobilizeGreen claims that CFNCR, *inter alia*, improperly delayed reimbursements under the grant, failed to transfer the grant to another entity, and engaged in flawed accounting practices. In their Complaint, MobilizeGreen and Allen (collectively, "MobilizeGreen") allege breach of fiduciary duty, breach of contract, fraud, negligence, negligent supervision, defamation and defamation *per se*.

2. Removal is proper under 28 U.S.C. § 1441 because this Court has original federal question jurisdiction over this matter under 28 U.S.C. § 1331. This Court has federal question jurisdiction because MobilizeGreen's Complaint presents state law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

---

[1] CFNCR will also move to dismiss this action within seven (7) days, pursuant to Fed. R. Civ. P. 81(c)(2)(C). The motion to dismiss will demonstrate that each of MobilizeGreen's asserted causes of action fail to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Specifically:

> a. Count I of the Complaint, alleging breach of fiduciary duty, turns on whether, under federal law, MobilizeGreen, as a federal subgrantee, had vested property rights in the Forest Service's grant to CFNCR, such that it could have "surrendered … *its* money" to CFNCR in trust and thereby established a fiduciary relationship with CFNCR, as the Complaint alleges.
>
> b. Count IV of the Complaint, alleging breach of contract, turns on whether, as a matter of federal law, CFNCR had the authority to unilaterally transfer the Forest Service grant to another entity that MobilizeGreen wished would replace CFNCR as its sponsor.

3. Removal is also proper under 28 U.S.C. § 1442(a)(1), the "federal officer removal statute," because (i) at all relevant times, CFNCR acted at the direction of the Forest Service, an agency of the United States Department of Agriculture, under a "cost share" agreement that resulted in a cooperative working relationship between CFNCR and the Forest Service, and through a comprehensive and detailed set of federal regulations; (ii) the actions MobilizeGreen's Complaint contests occurred because of what the Forest Service required CFNCR to do, including obtaining adequate source documentation for all reimbursements MobilizeGreen sought, advancing funds only after actual costs were incurred, and declining to transfer the grant to another entity; and (iii) CFNCR has colorable federal defenses to MobilizeGreen's claims. *See Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (stating elements of federal officer removal); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (same); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (same).

4. Arising under "the same nucleus of operative facts" as the removable claims, any claims not removable under §§ 1441 or 1442(a)(1) should be removed because this Court has supplemental jurisdiction over them.

5. Notice of removal is timely. 28 U.S.C. § 1446(b). MobilizeGreen filed its Complaint in Superior Court on September 12, 2014, and served CFNCR and each of the other defendants with the summons and Complaint on September 17, 2014.

6. This District embraces the District of Columbia, where the State Court Action is pending. 28 U.S.C. § 1441(a).

7. Promptly after filing this Notice of Removal, CFNCR will give written notice to MobilizeGreen and to the Clerk of the Superior Court for the District of Columbia, as required by 28 U.S.C. § 1446(d).

8. In accordance with 28 U.S.C. § 1446(a), copies of all executed process, pleadings, and orders served upon CFNCR in the State Court Action are attached hereto as Exhibit 1.[2]

9. CFNCR has filed a civil cover sheet contemporaneously with this Notice.

## FACTUAL BACKGROUND

10. CFNCR is a well-regarded nonprofit organization that government agencies, businesses, and wealthy families and individuals entrust to manage charitable funds, give grants to other nonprofits and serve as a fiscal sponsor to new nonprofits. Compl. ¶ 16. In Fiscal Year 2012, reflecting its reputation for responsible fiscal stewardship, CFNCR managed 650 donor funds with assets totaling more than $304 million, gave $60 million in grants to nonprofits, and fiscally sponsored projects totaling $1.3 million. *Id.* ¶ 17.

---

[2] The Superior Court for the District of Columbia also entered an Order Granting Consent Motion to Extend Time for Filing Response to Plaintiffs' Complaint, on October 8, 2014. That Order is unavailable via CaseFile Xpress as of the date of this filling. The docket reflecting the entry of the Order is included in Exhibit 1 to this Notice.

11. In 2012, MobilizeGreen, a startup nonprofit seeking to train young people to champion the cause of environmental protection, hoped to obtain grant funds from the Forest Service. *Id*. ¶¶ 6 & 18. But as a startup nonprofit without either tax-exempt status or "the financial/administrative expertise and capacity offered by" an organization like CFNCR, MobilizeGreen was unqualified to receive a grant on its own. *Id.* ¶¶ 18-19. Accordingly, MobilizeGreen reached out to CFNCR, asking CFNCR to obtain and manage the grant, with Mobilize Green serving as subrecipient or subgrantee. *Id.*

12. CFNCR ultimately agreed. *Id*. ¶ 21. On July 28, 2011, CFNCR and MobilizeGreen executed a standard CFNCR form agreement to create a fund to administer the grant. *Id.* ¶ 22 & Ex. 1 ("MobilizeGreen Agreement"). The MobilizeGreen Agreement provides, *inter alia*, that the "fund is established to provide temporary fiscal sponsorship for a period not to exceed November 1, 2011, at which time the Organization [MobilizeGreen] will transfer to another fiscal sponsor." MobilizeGreen Agreement § 8. The MobilizeGreen Agreement also authorized CFNCR unilaterally to amend it "to conform to the provisions of any applicable law or government regulation in order to carry out the purposes of this Fund." *Id.* § 7.

13. On August 29, 2011, approximately a month after executing the agreement with MobilizeGreen, CFNCR entered a grant agreement with the Forest Service. *See* Challenge Cost Share Agreement ("Forest Service Agreement"), attached as Exhibit 2, at 2.[3] The parties to this agreement were the Forest Service and CFNCR; MobilizeGreen was not a party. *Id.* at 1. The agreement commenced as of the date of the last signature (August 31, 2011) and terminated on September 30, 2012. *Id.* at 14.

---

[3]  The Forest Service Agreement, though not attached to MobilizeGreen's Complaint, was incorporated by reference. *See, e.g.*, Compl. ¶¶ 23, 36, 41, 44 & 54.

14.     The Forest Service Agreement obligated CFNCR to conduct a youth training and internship program—i.e., the program MobilizeGreen sought to implement—and authorized grant funding up to a maximum of $252,805.  *Id*. at 3.  The authorized maximum was subsequently increased to $273,805.  Compl. ¶ 23.  The Forest Service Agreement did not allow for the advance or immediate transfer of funds to CFNCR.  To the contrary, the agreement was a cost reimbursement agreement.  Consistent with federal regulations, *see, e.g.*, 7 C.F.R. § 3015.190; 7 C.F.R. § 550.20, that meant the Forest Service would reimburse CFNCR for incurred, allowable costs only upon submission of appropriate supporting documentation, Ex. 2 at 3 ("<u>PAYMENT/REIMBURSEMENT</u>.  The U.S. Forest Service shall reimburse the Community Foundation for the U.S. Forest Service's share of actual expenses, not to exceed $252,805 as shown in the Financial Plan. The U.S. Forest Service shall make payment upon receipt of Community Foundation's monthly invoice.").

15.     Nearly two years after the grant period expired, MobilizeGreen filed its Complaint in this case.  Nowhere in the Complaint does MobilizeGreen aver that it was not paid an amount for which it requested reimbursement from CFNCR.  Rather, MobilizeGreen's grievances are that CFNCR: (i) unduly delayed making certain reimbursements or advances under the grant, and "defamed" MobilizeGreen, by seeking supporting documentation and justification—which federal regulations and the Forest Service Agreement required; (ii) failed to "transfer" the Forest Service grant to another organization, Social and Environmental Entrepreneurs ("SEE"), during the 13-month grant period; and (iii) made several "intentional" accounting errors.  Based on these allegations, MobilizeGreen claims breach of fiduciary duty, breach of contract, fraud, negligence, negligent supervision, defamation, and defamation *per se*.

6

16.     These purportedly state law claims require resolution of substantial questions of federal law and contest actions CFNCR took under the direction of a federal agency.

## GROUNDS FOR REMOVAL

### I.     Federal Question Jurisdiction

17.     "[F]ederal jurisdiction over a state law claim [under 28 U.S.C. § 1331] will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 133 S. Ct. 1059, 1065 (2013) (citing *Grable*, 545 U.S. at 313-14); *see also Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) (citations and internal quotation marks omitted) ("A case arises under federal law within the meaning of 28 U.S.C. § 1331 if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."). A federal issue is "necessarily raised" when an essential element of the plaintiff's claim "will necessarily require the application of [federal] law to the facts of [plaintiff's] case." *Gunn*, 133 S. Ct. at 1065. A federal issue is "actually disputed" when there is a "dispute respecting the effect of the federal law." *Id*. at 1065-66 (citing *Grable*, 545 U.S. at 313). "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 1066. Finally, the preservation-of-the-federal-state-balance requirement seeks to ensure that exercising jurisdiction "would not materially affect, or threaten to affect, the normal currents of litigation" in our federal system. *Grable*, 545 U.S. at 319.

18.     This Court has federal question jurisdiction over this matter because MobilizeGreen's Complaint contains claims that satisfy each of these requirements. Accordingly, removal is proper under 28 U.S.C. § 1441.

19. *Breach of Fiduciary Duty Claim.* The first element of a claim for breach of fiduciary duty is the existence of a fiduciary duty. *Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc.*, 595 F. Supp. 2d 110, 116 (D.D.C. 2009). In Count I of its Complaint, MobilizeGreen alleges that CFNCR owed it a fiduciary duty because it "reposed trust and confidence" in CFNCR by "surrendering over *its* business, goodwill, *and money*." Compl. ¶¶ 104-105; *see also id.* ¶ 2 ("[CFNCR] owed MobilizeGreen fiduciary duties—the duty of utmost care—in managing *MobilizeGreen's money*.") (emphasis added). The foundational premise of MobilizeGreen's claim, therefore, is that the grant funds under the Forest Service Agreement were, in fact, "MobilizeGreen's money"—*i.e.,* that MobilizeGreen had a vested property interest in them. Whether this premise is true, however, necessarily turns on the law of federal grants, and requires determining whether a subgrantee obtains a property right in federal grant funds. MobilizeGreen clearly contends that, under federal law, subgrantees obtain such rights. CFNCR disagrees. *See, e.g.,* 7 C.F.R. § 3015.12 (providing that "the total amount of money that the recipient is entitled to receive from USDA may not exceed the allowable costs incurred by the recipient for those activities"); OMB Circular No. A-122 (2004) (providing that only certain categories of costs are allowable and therefore recoverable under a federal grant).

20. The validity of MobilizeGreen's claim to ownership of federal grant funds also presents a substantial federal issue. If a court were to find that MobilizeGreen had a vested property right in the funds authorized under the Forest Service Agreement, its determination could work a sea change in the law of federal grants and affect "the federal system as a whole," including how federal agencies make and administer grant funding. *Gunn,* 133 S.Ct. at 1066; *see also Citizens Health Corp. v. Sebelius*, 725 F.3d 687 (7th Cir. 2013) (discussing whether a subrecipient of a grant had due process rights). With the potential for this kind of impact,

MobilizeGreen's breach of fiduciary duty claim is precisely the type of claim that the Supreme Court in *Grable* found to be sufficient to confer federal jurisdiction. *See Gunn*, 133 S. Ct. at 1066 (describing the federal issue in *Grable* as one with "broader significance . . . for the Federal Government").

21. Permitting a federal court to exercise jurisdiction over MobilizeGreen's breach of fiduciary duty claim would not disrupt any federal-state balance approved by Congress. Congress authorized federal agencies like the Department of Agriculture to make grants to advance national policy, and agencies in turn have issued comprehensive and detailed regulations governing the receipt and use of grant funds. *See supra*, ¶ 19. Congress did not intend to leave disputes over the meaning of these laws to state courts, even where such disputes are subsumed within state law causes of action. *Bender*, 623 F.3d at 1131 ("At stake is the interpretation of a federal regulation that governs the conduct of a federal agency . . . . By contrast, there is no discernable state interest in a state forum."). And because "it will be the rare [claim for breach of fiduciary duty] that raises a contested issue of federal law" concerning federal grants, exercising jurisdiction here would have "only a microscopic effect on the federal-state division of labor," *Grable*, 545 U.S. at 315, and would not "lead[] to a wave of new filings in federal court," *Bender*, 623 F.3d at 1131.

22. *Breach of Contract Claim.* An essential element of a breach of contract claim is the existence of a valid, enforceable contract. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). MobilizeGreen alleges in Count IV of the Complaint that, by failing to transfer the Forest Service grant to SEE, CFNCR breached the MobilizeGreen Agreement—*i.e.,* the "valid and enforceable contract under which [CFNCR] promised to allow MobilizeGreen to transfer to another fiscal sponsor and manage MobilizeGreen's project funds." Compl. ¶ 121.

MobilizeGreen's breach of contract claim thus necessarily turns on whether, as alleged, the relevant "transfer" provision in the MobilizeGreen Agreement is valid and enforceable. That is a question of federal law and regulation. The Anti-Assignment Act, 41 U.S.C. § 6305, provides that "[t]he party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party." Similarly, the United States Department of Agriculture's regulations require a grantee to obtain prior written approval from the Forest Service "for transferring to another party the actual performance of the substantive programmatic work, and for providing any form of financial assistance to another party." 7 C.F.R. § 3015.113(d). The Complaint makes no allegation that the Forest Service ever provided prior written approval for transferring the Forest Service grant to SEE.

23. Therefore, an essential element of MobilizeGreen's breach of contract claim—whether the purportedly breached "transfer" provision is enforceable—is a disputed question of federal law. In fact, even apart from the parties' dispute over this question, it does not appear that any federal court has ever addressed whether the Anti-Assignment Act applies to federal grants. The Act prohibits transfers of "contracts," a term that by its plain meaning includes grants, but in the years following the passage of the Act, Congress enacted laws and agencies adopted regulations that have distinguished between grants and procurement contracts for goods and services. A federal court should be the first to address whether the Act applies to federal grants.

24. Determining whether, under federal law, a subrecipient of a federal grant may contract with the grantee to vary the terms of the grant is also a *substantial* question that a federal court should decide. That determination could have broad and significant implications for the relationship among federal government agencies, grantees and their subgrantees. *Gunn*, 133

S.Ct. at 1066 (describing the federal issue in *Grable* as one with "broader significance . . . for the Federal Government"). The determination is not merely "fact-bound and situation-specific," limited in application to the parties in this case. *Id.* at 1068.

25. Nor would having a federal court decide this issue upset the federal-state balance approved by Congress. The question of whether two parties are permitted to enter into a contract that might violate federal statutory and regulatory prohibitions on grant transferability belongs in federal court. *See Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669 (1985) ("Unlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy."). And as with the breach of fiduciary duty claim, permitting CFNCR's breach of contract claim to be heard in federal court "would not materially affect, or threaten to affect, the normal currents of litigation" in state and federal courts, as it is the "rare [breach of contract] case that involves contested issues of federal law" like the transferability of federal grants. *Grable*, 545 U.S. at 319.

26. Federal jurisdiction is favored in cases that present "nearly pure issue[s] of law." *Bender*, 623 F.3d at 1130. The federal questions in this case are pure issues of law: (1) Does a subrecipient of a federal cost reimbursement grant obtain a right or interest in grant funds such that it could "surrender" such right or interest to the grantee and thereby establish a fiduciary relationship? (2) Is a "transfer" provision in an agreement between a federal grantee and its subgrantee enforceable under federal statutes and regulations?

27. Moreover, even where a cause of action rests on state law, "federal courts have jurisdiction when . . . it is apparent that the federal questions overwhelmingly predominate." *See Bender*, 623 F.3d at 1130. Here, it is apparent from the face of MobilizeGreen's Complaint that

11

federal questions predominate. MobilizeGreen has sued over the administration of a federal grant, claims it had a vested property interest in federal grant funds, implies federal law permitted the unilateral transfer of the grant to another entity, alleges misrepresentations to a federal government agency, and asserts CFNCR was noncompliant with federal regulations. *See e.g.*, Compl. ¶¶ 2, 54, 57, 58, 105. All of these issues "sensibly belong[] in federal court." *Grable*, 545 U.S. at 315.

## II.    Federal Officer Removal

28.    A defendant also may remove a case from state court to federal court under 28 U.S.C. § 1442(a)(1). "Four elements are required for removal under § 1442(a)(1): (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person,' within the meaning of the statute." *Jacks*, 701 F.3d at 1230. "[T]he federal officer removal statute is not 'narrow' or 'limited,'" and may be invoked by private parties without carrying any "special burden." *Ruppel*, 701 F.3d at 1180 (citations omitted).

29.    This case satisfies the requirements of Section 1442(a)(1).

30.    As to the first requirement, a defendant acts under the direction of a federal officer where the defendant acts in concert with, and receives delegated authority from, the federal government, *Isaacson*, 517 F.3d at 136-37, where the relationship involves close regulation, monitoring or supervision, *Jacks*, 701 F.3d at 1231, or where the defendant performs the contested acts under "comprehensive and detailed regulations." *Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 724 (E.D. Pa. 2008); *see also Ruppel*, 701 F.3d at 1181 (noting that the "acting under" requirement is liberally construed and is satisfied when

"defendants work[] hand-in-hand with the federal government to achieve a task that furthers an end of the federal government").

31.     At all relevant times, CFNCR acted under the direction of a federal officer. Under the Forest Service Agreement, CFNCR worked "in partnership with the Forest Service"; indeed, the purpose of the Agreement was to "document the cooperation between the parties." *See* Ex. 2 at 2. The Agreement required CFNCR to submit monthly detailed invoices, as well as quarterly progress reports. *Id.* at 3 & 8. Forest Service employees supervised CFNCR's administration of the grant, communicating frequently with CFNCR about the grant program and the disbursement of the grant funds. And CFNCR carried out its obligations under the Agreement pursuant to detailed rules set forth in the Code of Federal Regulations and related OMB Circulars. *See, e.g.*, 7 C.F.R. 3015, *et seq.*; OMB Circular A-110 (1999); OMB Circular A-122 (2004).

32.     As to the second requirement—that the acts for which the defendant is being sued occurred because of what the federal government required it to do, *Isaacson*, 517 F.3d at 137—federal regulations and the Forest Service Agreement required CFNCR to take the actions MobilizeGreen complains of.

   a.     MobilizeGreen alleges breach of fiduciary duty, negligence and negligent supervision based in large part on alleged delays in obtaining reimbursements for program expenses. Compl. ¶¶ 31-43, 78-83, 103, 106, 116, 118, 136, 138. But any "delays" were occasioned by CFNCR's need for additional supporting documentation—a need driven by federal regulations and the Forest Service Agreement. Ex. 2 at 3; 7 C.F.R. § 3015.61.

    b.    MobilizeGreen also complains that CFNCR did not transfer the grant to SEE. Compl. ¶¶ 24-28, 121-123. But federal law gave CFNCR no discretion to do so. *See supra* ¶ 22.

    c.    MobilizeGreen's further complains that CFNCR engaged in "defamation" by questioning the meaning and sufficiency of certain invoices. Compl. ¶¶ 68-70. But federal regulations required CFNCR, as a federal grantee, to obtain adequate, audit-worthy source documentation and justifications for all requested payments. MobilizeGreen relatedly alleges defamation based on CFNCR's questions regarding invoices potentially reflecting alcohol purchases. Compl. ¶ 70. But OMB Circular A-122, which governed the administration of the grant, does not allow reimbursement for alcohol purchases.

33.    As to the third requirement for Section 1442(a)(1) removal, CFNCR possesses "colorable" federal defenses. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.13 at 137. The statute is "broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Equity Staffing Grp. Inc. v. RTL Networks, Inc.*, No. 13-CV-3510, 2014 WL 2566316, at *2 (D. Colo. June 6, 2014) (citing *Willingham v. Morgan,* 395 U.S. 402, 407 (1969)). Colorable federal defenses include sovereign immunity, preemption, official justification and reliance on regulatory prohibitions. *See CRGT, Inc. v. Northrop Grumman Sys. Corp.*, No. 1:12-CV-554, 2012 WL 3776369, at *2 (E.D. Va. Aug. 28, 2012); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 364 F. Supp. 2d 329, 336 (S.D.N.Y. 2004).

34. CFNCR has a colorable defense of reliance on regulatory prohibitions. Any alleged reimbursement delays that form the basis of MobilizeGreen's claims for breach of fiduciary duty, negligence and negligent supervision (Counts I, III and VII) were the result of CFNCR's compliance with federal regulations, which obligated CFNCR to obtain adequate supporting source documentation to justify payment. *See CRGT, Inc.*, 2012 WL 3776369, at *2. The same is true as to any alleged "defamation" of Mobilize Green (Counts V and VI), which entailed nothing more than CFNCR asking for backup documentation for or clarification of requested reimbursements that, without such documentation or clarification, federal regulations would have prohibited.

35. CFNCR also has a colorable defense of preemption to MobilizeGreen's breach of contract claim (Count IV). "A state common law claim is preempted if it 'actually conflicts with the federal requirement—either because compliance with both is impossible, or because the state requirement stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996)). A defense of "preemption exists, regardless of congressional intent, whenever a state law or claim actually conflicts with federal law." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (holding that negligence action against a manufacturer was preempted because it conflicted with a federal agency standard). Here, MobilizeGreen's claim that CFNCR breached the MobilizeGreen Agreement when it allegedly refused to transfer the Forest Service grant to SEE "actually conflicts with," and is thus preempted by, the Anti-Assignment Act, 41 U.S.C. §6305, and Department of Agriculture regulations prohibiting the assignability of grant benefits and obligations without prior written approval, 7 C.F.R. § 3015.113(d). *See supra* ¶ 22.

36. Finally, as to the fourth requirement for Section 1442(a)(1) removal, CFNCR qualifies as a "person," because "the 'person' contemplated by the federal officer removal statute includes corporations." *Jacks*, 701 F.3d at 1230; *see also Isaacson*, 517 F.3d at 136 (same).

37. Because CFNCR has satisfied the requirements of Section 1442(a)(1), removal is proper.

### III. Supplemental Jurisdiction

38. Once a district court has jurisdiction over a federal claim under 28 U.S.C. § 1331, 28 U.S.C. § 1367(a) permits it to exercise supplemental jurisdiction over state law claims that arise out of a "common nucleus of operative fact" such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding. *Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 28 (D.D.C. 2009). Here, all of MobilizeGreen's claims concern the administration of one 13-month federal grant. MobilizeGreen chose to allege these claims in a single Complaint. Because some of these claims "aris[e] under" federal law for purposes of Section 1331, *see supra* Part I, this Court may exercise its discretion to invoke supplemental jurisdiction over any claims not individually removable.

39. Moreover, because at least one of MobilizeGreen's claims is removable under 28 U.S.C. § 1442(a)(1), *see supra* Part II, the entire action is removable. *See* 14C Charles A. Wright & Arthur R. Miller et al., Federal Practice and Procedure § 3726 (4th ed. 2009) ("Because Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.").

### CONCLUSION

40. This action is removable under 28 U.S.C. §§ 1331, 1441, 1442(a)(1) and 1446.

41.     By filing this NoLtice of Removal, CFNCR does not waive any defenses that may be available to it, and does not concede that the allegations in the Complaint state a valid claim for relief under any applicable law.

Respectfully submitted,

/s/  Seth A. Rosenthal
Seth A. Rosenthal (# 482586)
Benjamin E. Horowitz (# 1017262)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
Telephone: (202) 344-4000
Facsimile: (202) 344-8300
Email: sarosenthal@venable.com
           behorowitz@venable.com


*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October, 2014, I caused the foregoing *Notice of Removal* to be served on counsel for Plaintiffs via U.S. Mail, first class postage prepaid, and electronic mail at the addresses below:

> Lorelie S. Masters, Esq.
> Koorosh Talieh, Esq.
> Jonathan Cloar, Esq.
> PERKINS COIE LLP
> 700 13th Street, NW, Suite 700
> Washington, DC 20005
> Tel.: 202-654-6289
> Fax: 202-654-9120
> Emails: LMasters@perkinscoie.com
> KTalieh@perkinscoie.com
> JCloar@ perkinscoie.com

/s/ Seth A. Rosenthal
Seth A. Rosenthal