# EXHIBIT 1

To Notice of Removal

Case No. 1:14-cv-01698



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MOBILIZEGREEN, INC.

    Vs.                              C.A. No.     2014 CA 005764 B

THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge HERBERT B DIXON JR
Date:  September 12, 2014
Initial Conference: 9:30 am, Friday, December 12, 2014
Location:  Courtroom 415
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

**14 - 0005764**

MobilizeGreen, Inc. and Leah Allen
_____
                                    Plaintiff

**14 - 0005 7 6 *

                vs.

The Community Foundation for the National Capital              Case Number _____

Region
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Lorelie S. Masters
_____
Name of Plaintiff's Attorney

Perkins Coie LLP, 700 13th Street, NW, Ste. 700
_____
Address
Washington, DC 20005

202-654-6289
_____
Telephone

_Clerk of the Court_

By _____
                              Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት፣ (202) 879-4828 ይደውሉ፡

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                           CASUM.doc

**IN THE SUPERIOR COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| MobilizeGreen, Inc.<br>1200 18th Street, NW, #700<br>Washington, DC 20036<br><br>Leah Allen<br>1200 18th Street, NW, #700<br>Washington, DC 20036<br><br>Plaintiffs,<br><br>v.<br><br>The Community Foundation for the<br>  National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Terri Lee Freeman, in her capacity as<br>  President of The Community Foundation<br>  for the National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Mark B. Hansen, in his capacity as the Chief<br>  Financial Officer of The Community<br>  Foundation for the National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Angela Jones Hackley, in her capacity as Vice<br>  President of Philanthropic Services of The<br>  Community Foundation for the National<br>  Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005<br><br>Adrienne Brown, individually and in her<br>  capacity as Director of Finance & Accounting<br>  of The Community Foundation for the<br>  National Capital Region<br>1201 15th Street NW, Suite 420<br>Washington, DC 20005,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____<br><br>   **Jury Trial Demanded** |

RECEIVED
Civil Clerk's Office
SEP 2 2014
Columbia

**COMPLAINT**

Plaintiffs MobilizeGreen, Inc. ("MobilizeGreen"), and Leah Allen (collectively, "Plaintiffs"), allege as follows:

**INTRODUCTION**

1.      This is an action to recover damages for breach of fiduciary duty, fraud, negligence, breach of contract, negligent supervision, and defamation by Defendants when the Community Foundation for the National Capital Region ("Foundation" or "CFNCR") served as MobilizeGreen's fiscal sponsor from on or about July 28, 2011, until September 30, 2012.

2.      During its fiscal sponsorship, Defendants grossly mismanaged MobilizeGreen's project and related monies, intentionally misled Plaintiffs about such mismanagement, and then tried to conceal their wrongdoing through fraudulent financial reporting and malicious conduct. As fiscal sponsor, the Foundation owed MobilizeGreen fiduciary duties – the duty of utmost care – in managing MobilizeGreen's money and interfacing with the federal government agency which funded MobilizeGreen's student intern project. Contrary to those duties, the financial reports the Foundation was responsible for preparing intentionally misstate and omit material information, deceiving donors, funders, and MobilizeGreen regarding the Foundation's financial stewardship.

3.      Defendant Adrienne Brown, with the approval of Foundation officers, Defendants Terri Lee Freeman, Angela Jones-Hackley, and Mark Hansen, also knowingly published false and baseless defamatory statements against Ms. Allen as part of their unprovoked effort to conceal Defendants' financial wrongdoing. The false defamatory statements were designed to and did harm MobilizeGreen and Ms. Allen's reputation, business interests, and profession.

4.      Despite red flags about their employee's egregious misconduct, Defendants Freeman, Jones-Hackley, and Hansen, officers of the Foundation, further negligently failed to supervise Defendant Brown, who was at the center of the wrongdoing. Moreover, the Foundation lacked the necessary internal controls to prohibit such wrongdoing; displayed a willful, wanton, and reckless indifference to its

fiduciary duties owed to MobilizeGreen; and abused the public trust regarding the integrity of its operations, accountability, and financial reporting as a tax-exempt charity.

5.    As a direct and proximate result of the Defendants' actions and omissions, Plaintiffs have been damaged.

**PARTIES**

6.    Plaintiff MobilizeGreen is a non-profit corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia. MobilizeGreen's mission is to build the next generation of environmental leaders, stewards, and volunteers from under-represented communities using MobilizeGreen's innovative internship, mentoring, career coaching, and collaborative partnership model.

7.    Plaintiff Leah Allen is a Founder and the President of MobilizeGreen and maintains her principal residence at 1324 Taylor Street, NE, Washington, DC 20017.

8.    Defendant The Community Foundation of the National Capital Region ("Foundation" or "CFNCR") is a non-profit corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.

9.    Defendant Terri Lee Freeman is the President of the Foundation and, upon information and belief, resides at 5452 Wooded Way, Columbia, Maryland 21044, and works at the Community Foundation in Washington, DC, where the acts alleged herein took place.

10.    Defendant Angela Jones-Hackley is the Vice President of Philanthropic Services of the Foundation and, upon information and belief, resides at 23404 Summerstown Place, Sterling, Virginia 20166, and works at the Community Foundation in Washington, DC, where the acts alleged herein took place.

11.    Defendant Mark Hansen is the Chief Financial Officer of the Foundation and, upon information and belief, resides at 3207 Kaiser Drive, Ellicott City, Maryland 21043, and works at the Community Foundation in Washington, DC, where the acts alleged herein took place.

12.     Defendant Adrienne Brown is the Director of Finance and Accounting of the Foundation and, upon information and belief, resides in Capitol Heights, Maryland, and works at the Community Foundation in Washington, DC, where the acts alleged herein took place.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this Complaint pursuant to D.C. Code § 11-921.

14.     This Court has personal jurisdiction over Defendant CFNCR pursuant to D.C. Code § 13-422; and over Defendants Freeman, Hansen, and Brown pursuant to D.C. Code § 13-423(1), (2), and (3).

15.     Most of the acts alleged in this Complaint arose in the District of Columbia; therefore, venue in this district is proper.

## FACTUAL BACKGROUND

**CFNCR's Role as Fiscal Sponsor**

16.     The Foundation is a Washington, DC-based 501(c)(3) non-profit that manages donor-advised funds, gives grants to non-profits, and fiscally sponsors new organizations. Fiscal sponsorship is a relationship between a tax-exempt organization like the Foundation that serves as the official recipient of charitable donations for a new or smaller organization that is not yet recognized as tax-exempt. In this relationship, the organization that has tax-exempt status is the "fiscal sponsor" and the organization that does not have tax-exempt status is the sponsored organization.

17.     In its fiscal year ending 2012, the Foundation managed 650 donor funds with assets totaling more than $304 million on behalf of wealthy individuals, families, corporations, and other organizations; gave $60 million in grants to non-profits; and fiscally sponsored projects in amounts totaling $1.3 million. As a result of these services, the Foundation claims it has more than "30 years of proven experience in sound financial stewardship."

18.     On or about June 1, 2011, MobilizeGreen, a then new non-profit with no employees, no revenues, and no federal or state tax-exempt status, asked the Foundation to serve as its fiscal sponsor. MobilizeGreen thus asked the Foundation to act as MobilizeGreen's fiscal sponsor and agent regarding monies MobilizeGreen received to fulfill its charitable mission. This includes receiving and dispersing

monies that the USDA Forest Service wanted to grant to MobilizeGreen to fulfill MobilizeGreen's

mission of delivering to a government agency a national diversity internship pilot program (the

"Project"). The Project, which was MobilizeGreen's first and only source of income at the time, is part of

a high priority youth initiative of the Obama Administration, and, thus, a key focus of the Forest Service.

19.     MobilizeGreen sought out the Foundation to serve as its fiscal sponsor because

MobilizeGreen at the time lacked the 501(c)(3) tax-exempt status required to receive the Project funds. It

also needed the financial/administrative expertise and capacity offered by the Foundation so that

MobilizeGreen founder and sole volunteer, Plaintiff Allen, could focus on delivering a quality program

for the high visibility Project. New non-profits commonly turn to fiscal sponsors to provide these

services in their formative stages.

20.     Fiscal sponsorships are designed to serve these exact purposes. Fiscal sponsors provide

"fiduciary oversight, financial management, and other administrative services to help build the capacity of

charitable projects," according to publications provided by the National Council of Nonprofits:

> Since the fiscal sponsor is already an operating non-profit organization
> with IRS tax-exempt status, the fiscal sponsor's Board of Directors can
> immediately provide fiduciary oversight, while the fiscal sponsor's staff
> manages contributions and supports general project operations. The
> ability to rely on this existing infrastructure and administrative backbone
> allows project leaders to keep costs low while focusing on vision,
> mission and generating high-quality programs and outcomes.

Because sponsored projects entrust their business, their money, and their goodwill to an established

organization, supposedly having an expertise in these areas, fiscal sponsorships by their nature are

relationships of good faith, demanding trust and confidence. *See* National Network of Fiscal Sponsors,

*Guidelines for Comprehensive Fiscal Sponsorship*, Tides (October 14, 2010),

http://www.tidescenter.org/nnfs.

21.     On or about July 22, 2011, the Foundation agreed to serve as a temporary fiscal sponsor

for MobilizeGreen's Project with the Forest Service.

22.     On July 28, 2011, the parties fully executed the "Agreement to Create a Sponsored

Program Fund" ("Program Fund Contract"), which was prepared by the Foundation. The agreement

required the Foundation to establish the "Mobilize Green Fund" (the "Fund") to serve as "temporary fiscal sponsor" for the Project from July 28, 2011, through November 1, 2011. Section 8 of the Program Fund Contract stated: "This fund is established to provide temporary fiscal sponsorship for a period not to exceed November 1, 2011, at which the time [MobilizeGreen] will transfer to another fiscal sponsor." In consideration for services by the Foundation, MobilizeGreen agreed to the pay the Foundation an annual administrative fee of two percent (2%) on monies managed under the Fund, with the fee to be charged quarterly. *See* Exhibit A.

23.    Shortly after it agreed to serve as fiscal sponsor, on August 29, 2011, the Foundation signed the Challenge Cost-Share Agreement (the "Project Agreement") with the Forest Service for $273,805.00 (as modified), on behalf of MobilizeGreen so MobilizeGreen could implement its mission. By signing the agreement, the Foundation agreed, and was legally obligated, to comply with the terms and conditions of the Project Agreement on behalf of MobilizeGreen.

**CFNCR's Breach of Contract**

24.    On October 11, 2011, as required by the Program Fund Contract, MobilizeGreen secured a new fiscal sponsor, Social and Environmental Entrepreneurs ("SEE"), and signed a contract with SEE. Both the Foundation and MobilizeGreen expected the fiscal sponsorship between the parties to end, effective November 1, 2011.

25.    From the date the Foundation signed the Program Fund Contract, until November 1, 2011, the Foundation took virtually no role in administering or providing oversight to the Project. Plaintiff Allen personally paid all Project expenses that had been incurred during this period. An accounting firm hired by Ms. Allen prepared the Project budget, prepared the initial claims for reimbursement, and negotiated the indirect rates with the Forest Service. Ms. Allen also handled all administrative and programmatic matters.

26.    When time came to transfer the Project – and any of its funds – to SEE in November 2011, however, the Foundation refused to do so. To transfer the Project to SEE without harming the Project, the Foundation simply had to re-grant the Funds to SEE so that SEE could administer the Project.

- 6 -

Unlike the Foundation, SEE had experience with Federal agreements and specifically had worked with Forest Service partnership agreements.

27.      Without the Foundation re-granting the Project Funding to SEE, MobilizeGreen had no way to pay its expenses from Project Funds without Ms. Allen billing her volunteer time to the Project and incurring taxable income to pay MobilizeGreen's bills.  As a fiscal sponsor of SEE, MobilizeGreen was prohibited by contract from establishing or maintaining a business bank account.  Therefore, the Foundation's refusal to transfer the Project to SEE created severe cash-flow issues for MobilizeGreen and Ms. Allen.  It also created tax issues for Ms. Allen, requiring her to pay income taxes she would not have had to pay had the Foundation re-granted MobilizeGreen's funds to SEE.

28.      Thereafter, the Foundation refused both (1) to re-grant MobilizeGreen's funds to SEE and (2) to pay legitimate Project bills from MobilizeGreen's Project Funds (*see infra* paragraphs 30 through 41).  As a result, Ms. Allen struggled to continue operating MobilizeGreen and the Project without such Project payments.   MobilizeGreen lost its office space and had no way to pay intern stipends on another project. Further, Ms. Allen lost credibility and business opportunities with partners, funders, and vendors.

**CFNCR's Financial and Administrative Mismanagement**

29.      As fiscal sponsor to the Project, the Foundation had a duty to provide fiduciary oversight, financial management, and other administrative services.  To meet its fiscal sponsor duties, the Foundation was required to be a good steward of the funds that MobilizeGreen entrusted to it.  At a minimum, this meant paying Project bills on time; reading and understanding the Project Agreement; and preparing, signing, and understanding critical agreements and documentation related to the Project.  It also required the Foundation and its officers and high-level employees to act in the best interest of the Project, free of any self-dealing or misconduct.

30.      Instead, the Foundation delayed paying bills for months at a time; was tardy about almost everything related to the Project; and routinely harmed the Project by putting its interest over the Project's interests.  The Foundation knew nothing of the Project's programmatic purposes; had no policies or

- 7 -

procedures to implement the Project; did not understand how the Federal government payment and

reporting processes worked; and, despite such lack of knowledge, refused to re-grant MobilizeGreen

funds to SEE, which had such expertise.

        *A.*    *CFNCR's Stonewalling to Delay Paying Invoices*

    31.    The Project started on September 1, 2011.

    32.    On February 17, 2012, the Forest Service paid the first Project payment in the amount of

$38,028.25, based on invoices from September 1, 2011. On February 24, 2012, the Foundation received

the Forest Service's monies for MobilizeGreen in the amount of $38,028.25. The Forest Service had

expedited payment so MobilizeGreen could deliver an important upcoming Project training for Forest

Service interns overseen by MobilizeGreen on March 26-29, 2012.

    33.    On March 15, 2012, MobilizeGreen provided the Foundation the first batch of Project

invoices totaling $32,028.25, for work on the Project from September 1, 2011. On March 21, 2012, two

business days before the training, Defendant Brown, the Director of Accounting and Finance for the

Foundation, refused to pay those March 15 invoices, requesting additional back-up documentation. Early,

on March 23, 2012, MobilizeGreen resubmitted a smaller batch of invoices with the requested back-up

documentation, and pleaded with the Defendants Brown, Jones-Hackley, and Hansen to pay the invoices

because the money was needed for the upcoming training that was to include three of the four top Forest

Service leaders.

    34.    Relying on a variety of excuses, each of which turned out to be arbitrary and shifting,

Defendant Brown refused to pay invoices. For example:

        a.    For one invoice in the amount of $3,763.00, received by the Foundation on March 15, 2012, the Foundation claimed it could not mail the check without instructions from Ms. Allen. Despite having the check, invoice address, and W-9, the Foundation did not pay this invoice for more than three months – until May 24, 2012.

        b.    For the caterer invoices for the training totaling $557.50, received the same day, May 15, 2012, the Foundation claimed it mailed the check (presumably without instructions from Ms. Allen), but the "check got lost in the mail." Despite repeated requests from MobilizeGreen as late as July 18, 2012, to reissue the lost check, the Foundation did not pay this invoice amount until August 23, 2012,

more than three months later – and a day after the vendor contacted Ms. Brown
directly.

35.     Defendants Jones-Hackley, Hansen, and Brown knew MobilizeGreen needed the Project

Funds to pay for the curriculum, intern and participant hotel bills, training material, food, intern travel

stipends, the community service event, and airfare for two other participants.  Yet, these Defendants

dodged MobilizeGreen's requests to talk about meeting these needs until the training was well over.

36.     MobilizeGreen, which had only one volunteer and no paid employees, had to deliver the

training for 15 participants for the Project without any of the funding it had earned for almost seven

months of work.  Without funding, MobilizeGreen and Ms. Allen struggled to meet the terms and

conditions of the Project Agreement with the Forest Service.  The callous and reckless disregard for the

Project by Defendants Jones-Hackley, Hansen, and Brown continued throughout the Project, and severely

damaged both the Project and Ms. Allen's reputation.

37.     The Foundation's payment delay tactics continued.  For example, on April 11, 2012,

Plaintiff Allen wrote a pointed letter to Defendant Freeman, the Foundation CEO, requesting that the

Project be transferred immediately to SEE because of the harm caused by the Defendants' conduct and

failures to pay.  During a phone call about the issue, on Thursday, April 19, 2012, Defendant Freeman

promised that the Foundation would pay most of the invoices on the following Monday, April 23, 2012.

38.     However, on Friday, April 20, 2012, at 6:32 pm – after the close of normal business

hours, ensuring that MobilizeGreen and Ms. Allen had left for the business day – Defendant Brown sent a

seven-page letter, again questioning each invoice, requiring detailed answers and invoice changes before

the Foundation would pay the bills.  Here are a few of Defendant Brown's questions and tactics used yet

again to delay payment:

a.      Although MobilizeGreen never used a Philadelphia company (and was not
        prohibited from doing so), Defendant Brown asked for a written justification on
        "why was a company [the accountant] in Philadelphia utilized?" by
        MobilizeGreen.

b.      Despite already receiving a list of training participants, the agenda, and the
        programmatic justification of the training, Defendant Brown demanded that

- 9 -

MobilizeGreen provide the same list of training attendees for each invoice for the same training.

c.  Defendant Brown made up imaginary double-billing issues and inflated invoice amounts – each of which proved to be false – to justify her continued refusal to not pay invoices.

d.  Defendant Brown indicated that she liked another consultant's travel form better and so demanded that the form should be used rather than other travel forms that had been used that contained the same information in a different layout.

39.  Not one check promised by Defendant Freeman was released by the Foundation to MobilizeGreen or any vendor on Monday, April 23, 2012.  Further, there were even bills that Defendant Brown did not question, yet still refused to pay.

40.  From February 24, 2012, until May 17, 2012, a key period for the Project and MobilizeGreen's business model and its interns, Defendant Brown, with the direct knowledge of Defendants Hansen and Jones-Hackley, and upon information and belief the direct knowledge of Defendant Freeman, did not pay one invoice to any MobilizeGreen vendor, partner, or Ms. Allen.

41.  The Foundation's unjustified excuses continued through on or about May 24, 2012, until the Forest Service intervened to admonish the Foundation to comply with the terms of the Project Agreement.  In the admonishment, the Forest Service program officer questioned Defendant Hansen about why the Foundation was not complying with contract requirements and why no reports had been made even though Forest Service interns were in the field and needing payments, uniforms, or required CPR training promised them:

> I am contacting you as the signatory on the above referenced agreement.  It has come to my attention by the Forest Service Grants & Agreements staff that agreement # 11-CS11132424-310 is not compliant with requirements to submit signed monthly invoices of actual expenses incurred and quarterly program performance reports.  Attached is a copy of the agreement; please note requirements detailed regarding these requirements on pages three and eight.
>
> There [have] been no signed quarterly reports for this past quarter and the interns have been in the field for over 2 months.  Additionally, we have not received invoices for reimbursement since the approved reimbursement claim in February.  On a recent call with the interns and the staff that supervise them, I was also informed that the interns do not have their uniforms or have not received the required Cardiopulmonary

- 10 -

Resuscitation (CPR) training and subsequent certificate, nor have
additional trainings been scheduled.

42.     Even after the admonishment, from May 23, 2012, until June 15, 2012, the Foundation
paid just $13,961.37 to partners and vendors out of the $38,028.25. Those monies should have been, and
were, readily available in MobilizeGreen's restricted Project Fund since February 24, 2012.

43.     The Foundation continued paying MobilizeGreen's bills late until the very end of the
Project. Examples of this include, but are not limited to, the following:

    a.    The Foundation received an August invoice from one partner totaling $10,392.34
          in early September 2012. The Foundation paid this invoice on November 21,
          2012.

    b.    The Foundation received an expense reimbursement invoice from Plaintiff Allen
          totaling $1,753.00 on or about May 23, 2012. The Foundation paid this invoice
          on October 31, 2012.

B.      *CFNCR's Gross Mismanagement*

44.     In addition to refusals to pay invoices, the Foundation did not complete administrative
duties related to the Project. For example, the Project Agreement required that the Foundation bill the
Forest Service on a monthly basis. After the Forest Service intervention, the Foundation submitted its
first claim for reimbursement to the Forest Service on June 26, 2012. The Forest Service immediately
rejected the claim as incorrect.

45.     As a result of the Foundation's billing failure, the Forest Service could not process and
pay funds to the Project. As a result, the Foundation had to take $85,000 from its operating or some other
fund to cover mounting Project liabilities.

46.     The Foundation's next attempt to submit claims for reimbursement also failed. On or
about July 31, 2012, the Foundation submitted its second attempt for reimbursement. On August 2, 2012,
the Forest Service also rejected this claim.

47.     Frustrated at the Foundation's inability to submit proper claims for reimbursement, the
Forest Service had to hold a "mini tutorial" on August 3, 2012, for Defendant Brown to show her how to
complete the forms correctly. Finally, the Foundation submitted its first successful claim for

reimbursement on August 14, 2012, almost a year after the Project started, and just a little over a month

before it abandoned the Project.

      48.     The Foundation's financial recordkeeping also was a mess.  Its recordkeeping was in

such chaos that when it came time to close out the Project, the Foundation could not even provide an

accurate accounting to the Federal government.  Instead, the Foundation submitted MobilizeGreen's

original budget as the final accounting to close out the Project.  The original budget, which had been

prepared before the Project Agreement start date by Ms. Allen, did not reflect budget modifications,

actual expenditures, or an accurate accounting.

      49.     The Foundation also inexplicably delayed signing sub-recipient agreements needed for

funding for MobilizeGreen partners to comply with their internal audit compliance.  The sub-recipients

were key partners that handled the intern payroll and compliance issues for the Project.  The Foundation

received the sub-recipient agreements on or about March 15, 2012; it signed them on May 24, 2012, and

then it told the Forest Service on or about July 11, 2012, it was quitting the Project.

      50.     Due to the Foundation's mismanagement, the Forest Service, partners, and vendors held

MobilizeGreen and Ms. Allen accountable for the Foundation's incompetence and stonewalling.  For

example, a non-profit partner, desperate for payment, emphasized to Ms. Allen in an email that it had

reached the "breaking point," demanding a wire transfer of Project funds:

> I am sorry to send an e-mail under these circumstances; but, it is beyond
> critical that we receive the wire transfer today for all 3 months (March -
> April - May) for Mobilize Green.
>
> ....We went "all in" and we want to stay the course and have
> demonstrated above and beyond by pulling money out of our coffers to
> keep aflow - but I have been warning Marie over the last several weeks
> that this Friday (TODAY) is our breaking point and we could no longer
> afford to operate without 100% reimbursement.... I need this payment.
>
> I have nothing left in our coffers to cover--That's why this wire transfer
> is paramount today.  We are a non profit which I know I dont have to
> explain what that means to either of you; but we have been carrying
> Mobilize Green for more than 3 months.  The pay days for the interns for
> today 6/15 not to mention the payday on 6/1 are NOT even included in
> the monies we are waiting on in this transfer; so again, our 3 invoices for
> March, April, and May are essential.

C.   *Defendant CFNCR Placed Its Own Self Interest Above That of the Project*

51.   The Foundation was supposed to act in good faith with the best interest of the Project always in mind.  Instead, almost every action it took was for the benefit of the Foundation at the expense of the Project, MobilizeGreen, and Ms. Allen.  For example, on or about July 11, 2012, Defendant Jones-Hackley told the Forest Service that the Foundation was terminating the Project early without bothering to tell Ms. Allen.  When the Foundation quit early, on October 1, 2012, the Forest Service de-obligated the remaining funding, leaving the Project $82,418.90 short of funds and leaving MobilizeGreen with no Forest Service agreement – and ongoing liabilities.

52.   The Foundation knew of the potential adverse harm to the Project if it quit early, yet it quit without ensuring that the Project would not be harmed by the Foundation's early departure.

53.   When the Foundation refused to sign the critical agreements for the Project, MobilizeGreen was forced to sign the documents, obligating MobilizeGreen to pay $198,085.07 to partners just to make sure the interns received their weekly stipend, workers compensation insurance, and health insurance.  MobilizeGreen did not have such funds and should never have been put in the position of having to take on this liability.  Signing these documents in a timely fashion and incurring liabilities for the Project were the Foundation's responsibility.

54.   Defendants Brown, Jones-Hackley, and Hansen also frequently made intentional misrepresentations to the Forest Service.  For example:

a.   On June 15, 2012, the Foundation and Defendant Jones-Hackley told the Forest Service that the Foundation's delay in paying two intern partners was due to the fact that the Foundation did not have the invoices from the partners from Ms. Allen.  In fact, MobilizeGreen had sent the invoices to the Foundation while it refused to pay them and simultaneously refused to sign the sub-recipient agreements.

b.   After receiving the Forest Service's admonishment for failure to honor the Project Agreement terms and conditions, on June 4, 2012, Defendant Hansen broadly blamed Ms. Allen for the entire Foundation fiasco, stating the Foundation "is currently experiencing difficulty in communicating with Ms. Allen and consequently is unable to provide a full response to you at this time."  Hanson made these statements despite the fact that the Foundation had been in constant communication with MobilizeGreen, which was pleading for payment.

- 13 -

55.     Defendants owed MobilizeGreen duties of care, loyalty, and impartiality, which they breached by failing to pay bills, gross mismanagement in handling the Project, and promoting their own self-interest over the Project.  As a direct and proximate cause of Defendants' breaches of these duties, MobilizeGreen's intern, training, accounting, and other partners quit the Project, MobilizeGreen lost business opportunities, and Plaintiffs' reputations were severely damaged.

**CFNCR's Fraudulent Financial Reporting**

56.     On top of the mismanagement, the Foundation's accounting for the Project is inaccurate, incomplete, and dishonest and switches improperly from an accrual basis to cash basis of accounting. After refusing to pay the bills and botching the Project administration, the Foundation then tried to conceal its errors and omissions by falsifying material information on financial reports and by failing to follow widely used cooperative agreement - a financial assistance award that includes substantial involvement between a federal agency and the recipient in carrying out the award activity - reporting convention that is clear and decipherable.

57.     On or about September 30, 2012, the Foundation submitted its final accounting to the Federal government to close out MobilizeGreen's Project funding on September 30, 2012.  Because of its practice of holding accrued invoices off books, the Foundation stated it forgot to include an August invoice in the amount of $10,392.34 in its final claim for reimbursement.  Therefore, without any apparent understanding of the Project closeout process, Defendant Brown requested additional funding from the Forest Service to "cover" the invoice, stating:

> We have (sic) invoice from one of the sub grantees for $10,392.34 that
> needs to be paid from August.  We have about ½ of the funds but
> definitely have under invoiced on the 09/30 reimbursement request….

58.     Not only did the amount requested make no sense, the Foundation never disclosed to MobilizeGreen this material information about a Fund shortage.  The Foundation's quarterly financial statement to MobilizeGreen, ending September 30, 2012, never disclosed a missing intern partner invoice for $10,392.34 and no such shortage of funds is identified on the statement.  In addition, despite being required by GAAP (*generally accepted accounting principles*) and the Federal government to use accrual

basis accounting, the Foundation used the cash basis of accounting to report the unpaid invoice as

incurred and paid on November 21, 2012.  Then, the Foundation reported this misleading information in

the wrong financial reporting period, ending December 31, 2012.

     59.     The accrual basis of accounting and cash basis of accounting differ as follows:

| CASH BASIS | ACCRUAL BASIS |
| --- | --- |
| Revenues are recorded when they are received, which may be before or after they are earned. | Revenues are recorded when they are earned, which may be before or after they are received. |
| Expenses are recorded when they are paid, which may be before or after they are incurred. | Expenses are recorded when they are incurred, which may be before or after they are paid. |
| Financial statements reflect revenues and expenses based on when transactions were entered rather than when revenues were earned or expenses incurred. | Financial statements match revenues to the expenses incurred in earning them, and more accurately reflect the results of operations. |
| No receivables are recorded. | A receivable is recorded when payment is not received at the point of award. |
| No payables are recorded. | Payables are recorded when payment is not made at the time of purchase. |
| No method of tracking partial payments is available. | Revenues and expenses are recorded in full, even though partial payments may be made over extended time periods. |
| Stan Snyder, *Understanding Cash and Accrual Basis Accounting* (2008), http://office.microsoft.com/en-us/support/understanding-cash-and-accrual-basis-accounting-HA010164612.aspx ||

     60.     Further, the Project ended September 30, 2012, and no expenses or income were incurred

beyond this date.  The Foundation received $31,262.98 in outstanding expenses from Project vendors

before September 30, 2012.  Before September 30, 2012, the Foundation provided the Federal

government a final claim for reimbursement based on the Foundation's accounting of each expense so the

Federal government could close out the Project.  The Federal government closed out the Project and

approved payment for all expenses recorded on the accrual basis of accounting as of September 30, 2012.

Again, continuing its practice of concealing liabilities, the Foundation used cash basis accounting to

record many of those expenses as incurred and paid in MobilizeGreen's project financial statements for

the wrong quarter, ending December 31, 2012.

61.     Further, on May 15, 2012, the Foundation received a vendor invoice in the amount of $22,122.00. The Foundation paid and reported the cost as incurred on June 27, 2012, and listed it on MobilizeGreen's financial report, ending June 30, 2012, as such. However, the Foundation submitted to the government a March 31, 2012 Financial Report Form 425, claiming that the Foundation had accrued the $22,122.00 expense as of March 31, 2012, showing that Foundation routinely switched between cash and accrual basis accounting. It also represented material financial information to the government one way, yet misrepresented the same information on MobilizeGreen's project financial statements.

62.     In addition, the project financial statements provided to MobilizeGreen by the Foundation lack the most basic transparency and accountability in project financial reporting presentation conforming to fund accounting and GAAP. "A fund is a fiscal and accounting entity with a self-balancing set of accounts." The Foundation's fund accounting requires funds such as MobilizeGreen's to be treated as a separate entity with its own general ledger, providing a balance sheet, statement of activity, and statement of cash flows. *See* Statement of Financial Accounting Standard 117 (the primary guidance relating to the financial statements of not-for-profit organizations).

63.     The Foundation, which appeared to routinely delay inputting many of MobilizeGreen's invoices in its accounting system, cannot even provide to MobilizeGreen a complete and detailed set of such required financial reports, despite repeated requests for such an accounting and presentation of project financial information. Moreover, the "quarterly" statement of activities that the Foundation has provided conceals and misrepresents material information. For example, MobilizeGreen's final project financial statement, received on September 13, 2013, almost a year after the Project ended, listed a total of $36,268.30 in a category labeled "other appropriations." The Foundation never lists or identifies these "other" project expenses in the project financial reporting, which expenditures total almost 20% of MobilizeGreen's total Fund amount. This omission of this information is intentional and material.

64.     The Foundation's practice of concealing liabilities, reporting expenses in the wrong accounting period, misapplying accounting principles, and misrepresenting or omitting material information from financial reports is fraudulent, according to the American Institute of Certified Public

Accountants ("AICPA").  *See* Statement of Auditing Standards (SAS) no. 82, Consideration of Fraud in a

Financial Statement Audit, December 2010 (AICPA Professional Standards, AU section 316).  AICPA

states:

- *Misstatements arising from fraudulent financial reporting* are intentional misstatements or omissions of amounts or disclosures in financial statements designed to deceive financial statement users where the effect causes the financial statements not to be presented, in all material respects, in conformity with generally accepted accounting principles (GAAP).  Fraudulent financial reporting may be accomplished by the following:

  o  Manipulation, falsification, or alteration of accounting records or supporting documents from which financial statements are prepared
  o  Misrepresentation in or intentional omission from the financial statements of events, transactions, or other significant information
  o  Intentional misapplication of accounting principles relating to amounts, classification, manner of presentation, or disclosure

  Fraudulent financial reporting need not be the result of a grand plan or conspiracy.  It may be that management representatives rationalize the appropriateness of a material misstatement, for example, as an aggressive rather than indefensible interpretation of complex accounting rules, or as a temporary misstatement of financial statements, including interim statements, expected to be corrected later when operational results improve.

65.    Defendants CFNCR, Brown, and Hansen prepared fraudulent project financial reports to

intentionally, knowingly, or recklessly deceive and induce reliance by MobilizeGreen, its funders, and

donors about the Foundation's financial stewardship of MobilizeGreen's Project in particular, and on

information and belief, the Foundation's overall financial health in general.

66.    MobilizeGreen reasonably and justifiably relied on Defendants CFNCR, Brown, and

Hansen.  It had no choice but to rely because Defendants had total and complete control over the financial

and administrative matters concerning the Project.

**Defamatory Statements**

67.    From the time Ms. Allen tried to access MobilizeGreen's Project Funds, continuing

through her efforts to get an accurate Project accounting in September 2013, Defendants knowingly

published false, malicious, and defamatory statements that were designed to, and did, harm Ms. Allen's reputation, business trade, and profession, as well as MobilizeGreen's reputation and business.

68.     On June 6, 2012, Defendant CFNCR and Defendant Brown – without any basis whatsoever – published to the Forest Service project officer, who oversaw the current Project and would oversee future MobilizeGreen projects, that Ms. Allen was falsely billing the Federal government for services with respect to an invoice for $22,122 for work not provided to the Project.  If true – which it was not – Ms. Allen could be convicted of a crime.  *See* 31 U.S. Code § 3730 of the False Claims Act.

69.     Defendant Brown also sent false, misleading, and defamatory emails to the Forest Service and others to embarrass and damage Ms. Allen's and MobilizeGreen's reputation.  In an email dated June 26, 2012, Defendant Brown sent all of MobilizeGreen's then invoices to the Forest Service, which is not the process for claims reimbursement, in an attempt to show the Forest Service that Plaintiff Allen was violating the use of Project funds and/or OMB Circular A-122.  The Forest Service recognized the truth and ultimately had to ask Defendant Brown to stop sending these invoices.

70.     In other emails, dated September 28 and 30, 2012, Defendant Brown falsely and bizarrely accused Ms. Allen of trying to steal intern stipends.  In the same emails, Defendant Brown also falsely accused Ms. Allen of facilitating alcohol purchases for interns and seeking reimbursement for such purchases.

71.     Not only were these allegations false, baseless, and published to MobilizeGreen's sponsor and Project partner, the Forest Service, they also were copied to officers of the Foundation, Defendants Hansen and Jones-Hackley, both whom knew of and condoned Defendant Brown's malicious conduct.

72.     Even after the end of the Project, the Foundation continued to publish false and defamatory information about MobilizeGreen and Ms. Allen.

73.     On September 13, 2013, the Foundation published MobilizeGreen's final project financial statement.  In the final project financial statement, which is available to the public and all of the Foundation's project financial statement users, the Foundation intentionally and maliciously omitted any

reference to MobilizeGreen and its vendors regarding MobilizeGreen's own Project. The report purports to include only "approved" expenses, which by implication indicates that MobilizeGreen's own and vendor Project invoices – each and every one of them – were not approved, allegedly because they violate OMB Circular A-122. This is false, malicious, and defamatory, implying that each of MobilizeGreen's expenses were unallowable and in violation of OMB Circular A-122.

74.     Ms. Allen is a private citizen, not a public figure. Ms. Allen is a former law firm partner, legal counsel and chief of staff to a Member of Congress, and director of government relations for the largest national youth conservation non-profit in the United States before forming MobilizeGreen. As such, she has enjoyed a distinguished reputation in the community, among her peers, and in her profession.

75.     As a proximate result of Defendants' defamatory statements, Plaintiff Allen suffered damage to her reputation, business trade, and profession, as well as MobilizeGreen's reputation and business.

**CFNCR Failed to Supervise Defendant Brown**

*A.     CFNCR Officers Ignore Red Flags*

76.     Defendant Lee, the CEO of the Foundation, knew that her accounting staff lacked capacity to handle a federal financial assistance award, which is why she originally insisted, and Ms. Allen agreed, on a "temporary fiscal sponsorship." When the Project did not transfer to MobilizeGreen's new fiscal sponsor, SEE, Defendant Lee should have done more to protect the Project.

77.     Instead, once the Project administration by the Foundation started falling apart, Defendant Lee and the other officers allowed Defendant Brown to engage in wrongdoing despite glaring red flags. The officers not only failed to take affirmative steps to independently verify Defendant Brown's claims – each of which turned out to be false and baseless – the officers knowingly and recklessly participated in the wrongful conduct.

78.     The Project started falling apart when Defendant Brown appeared to inflate the first batch of bills beyond the actual invoice amounts of $32,028.25 on March 21, 2012, as one of her schemes to

justify delay in paying Project bills, leaving the training with the Project sponsor in tatters.  In response to Defendant Brown's scheme, on April 11, 2012, Plaintiff wrote a pointed letter to Defendant Lee, further informing her about Defendant Brown's wrongful conduct.

79.    On April 18, 2012, Plaintiff Allen requested a private phone call with Defendant Jones-Hackley and Defendant Freeman so that Plaintiff Allen could discuss her concerns frankly with them about Defendant Brown's conduct.  Defendants Jones-Hackley and Lee refused, insisting that Defendant Brown be on the call.

80.    Defendants Brown, Jones-Hackley, and Brown participated on the call on April 19, 2012, and Defendant Lee promised that most of the invoices would be paid the next Monday.  On Monday, April 21, 2012, Defendant Brown again failed to pay any invoices.  Yet, Defendant Lee and the officers ignored this additional red flag.

81.    During that April 19, 2012 call, Defendant Brown also threatened Plaintiff Allen with "giving the [Project Funds] back to government."  In response, Plaintiff Allen indicated that such action would harm the Project.  Defendants Freeman and Jones-Hackley listened to and condoned Defendant Brown's threat, which turned out to be true.  Less than three months later, after Defendant Brown helped the Foundation make a complete mess of the Project, the Foundation gave $82,418.90 of MobilizeGreen's monies back to the Federal government, and such action has damaged Plaintiffs.

82.    Even though Defendant Brown had not distributed even one check by May 16, 2012, from the Project Funds, Defendants Freeman, Jones-Hackley, and Hansen continued to ignore more troubling red flags, including:

      a.    Project vendors emailing because of non-payment;

      b.    Excel spread sheets with shifting numbers being used without providing actual accounting ledger entries;

      c.    Invoices not being logged in the accounting system;

      d.    Required government financial reports not being completed;

      e.    Claims for reimbursement prepared and submitted by the Foundation being rejected by the government;

     f.     Inability to provide complete project financial statements for the Project;

     g.     Failure to provide project financial statements prepared in accordance with GAAP;

     h.     Claims by Plaintiff Allen about fund shortages; and

     i.     $85,000 in monies from an operational fund or some other fund diverted to the Project for no reason other than the fact that Defendant Brown refused to invoice the Federal government as required by the agreement the Foundation signed on MobilizeGreen's behalf.

83.     Yet, the Foundation's officers kept their heads buried in the sand, exercised no oversight, and ignored the problems with the Foundation's administration of the MobilizeGreen Project, as Defendant Brown continued to assert it was "Plaintiff Allen's fault," even when this excuse was implausible. In late November 2012, for example, Plaintiff Allen had to write Defendant Jones-Hackley about unpaid invoices long after the Project was closed and the Foundation had received the final payment of monies from the Forest Service. In another example, on July 24, 2012, Defendant Jones-Hackley told the Forest Service that three interns' checks "are being processed now, so checks should get to them in the mail this week." However, those checks were not paid until October 11, 2012.

84.     In addition, on October 3, 2012, in an email to Defendant Brown, copied to Foundation officer Defendant Jones-Hackley, Plaintiff Allen raised a very serious question about a potential Project Fund shortage. Ms. Allen stated: "In reviewing the numbers for the new budget, I think your final numbers may be off by about $7,600 that should not have been deducted from our program."

85.     In response, Defendant Brown dismissed Ms. Allen's concerns with false, malicious, and defamatory innuendo and accusations, stating:

> Our numbers are correct and we can support each expense based upon what you and the grantees have submitted – and please be sure to include the administrative fees.

> Please note however your reimbursement based upon duplicate requests you submitted on cash advances will be reduced. Also as I indicated before alcohol is unallowable and will never be a part of the reimbursement.

> Thanks for your diligence but I think we have everything finalized.

86.     Not only were there never "duplicate requests" or requests for unallowable alcohol made by Ms. Allen – and the Foundation never deducted any such payments – Defendant Brown, with the knowledge and complicity of the Foundation officers, used these types of false, malicious, and defamatory statements as a smokescreen to not answer serious questions about Project Fund discrepancies and payment delays.  Yet again, Defendant Jones-Hackley disregarded this new and deeply troubling red flag.

87.     However, two weeks after dismissing Plaintiff Allen's claim of money missing from the Project Fund, on October 16, 2012, Defendant Brown requested an additional $5,196.17 from the Forest Service.  The amount requested made no sense, was not disclosed to MobilizeGreen, and the shortage was not identified on the relevant project financial statement and had nothing to do with Ms. Allen's concerns about the potential shortage of $7,600, from MobilizeGreen's Project Funds.

88.     In still another glaring red flag, Defendant Brown never even bothered to provide MobilizeGreen a final project financial statement for the Project.  MobilizeGreen learned of this when Ms. Allen tried to prepare MobilizeGreen's Form 990 non-profit tax returns to submit to the Internal Revenue Service in the summer of 2013.  The numbers in the financial report, ending September 30, 2012, which should have been the final financial report, simply made no sense.

89.     On August 30, 2013, MobilizeGreen requested a detailed accounting of its Project, informing Defendant Lee that it had never received a final project financial statement with detailed specificity for its Project.  Rather than investigate this issue, Defendant Lee simply dismissed Plaintiff Allen's concern.  She also never questioned why another "final" project financial statement was needed for a Project that ended on September 30, 2012, and that already had received a final project financial statement for such period.

90.     On September 13, 2013, Defendants Hansen and Brown provided a new "final" project financial statement MobilizeGreen had never received.  Without any independent investigation or factual basis, Defendant Lee attested to the project financial statement's accuracy and transparency, stating:

"The information in it is accurate, transparent and certainly in keeping with the documentation that we received from Ms. Allen."

91.     The project financial statement, dated September 13, 2013, provided no detail, but was accompanied by a spreadsheet that was full of misstatements and omissions, including an entry for $135.00 for "Unitees Inc. – Accounting." Unitees is a t-shirt vendor from which MobilizeGreen never received any paid goods or services.

   B.     *The Foundation Lacked Effective Internal Controls*

92.     The purpose of a non-profit's whistleblower policy is to bring to light potential legal and ethical issues affecting the organization as a whole. Despite numerous red flags, the Foundation had no credible whistleblower policy or investigation protocol and failed to take seriously, let alone investigate, any one of an alarming number of red flags related to the Project.

93.     The Foundation also appeared to lack a credible way to independently verify Defendant Brown's false and defamatory statements and innuendo of wrongdoing against Plaintiff Allen since there was no oversight or supervision of Defendant Brown nor sufficient staffing of the Foundation's accounting function to adequately segregate duties. Defendant Brown was responsible for recording MobilizeGreen vendor invoices, paying vendor invoices, reconciling MobilizeGreen Fund statements, managing Fund amounts, and preparing Fund financial statements.

94.     In the Foundation's audited 2012 and 2013 consolidated financial statements, auditor BDO Seidman stated that the Foundation's management has the overall responsibility for the internal controls that prevent material misstatements:

> Management is responsible for the preparation and fair presentation of these consolidated statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal controls relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatements, whether due to fraud or error.

- 23 -

95.     Yet such controls were not in effect for the MobilizeGreen project, and Defendants Lee and Jones-Hackley seemed particularly unaware of GAAP accounting requirements and any independent duties of care they owed MobilizeGreen.

96.     Each project financial statement provided to MobilizeGreen regarding its Fund by Defendants Hansen and Brown contained false and misleading information that failed to comply with GAAP and project accounting requirements. The Foundation's internal controls, if any, failed to prevent, identify, or stop such false or misleading information being used to deceive and mislead MobilizeGreen and the Foundation's donors and funders.

97.     As a direct and proximate cause of the Foundation officers' reckless, wanton, and willful disregard of even basic supervision, oversight, and knowledge of their duties, Plaintiffs' reputation, partnerships, and opportunities were needlessly harmed.

**CFNCR's Conduct Damaged Plaintiffs**

98.     MobilizeGreen was damaged by the Defendants' refusal to transfer the Project, delay in paying monies held in trust on behalf of MobilizeGreen, and gross mismanagement. MobilizeGreen lost partners, lost business opportunities, and lost credibility with its partners, vendors, and program recipients.

99.     The Defendants' conduct also damaged the program and MobilizeGreen's business model, required needless scrambling and stressful work-arounds to meet grant compliance, and deprived the program of some of the elements that were bargained and paid for, including a quality community service event. It also left MobilizeGreen and Ms. Allen's reputation badly damaged.

100.    MobilizeGreen further was damaged by the Defendants' fraudulent and inaccurate financial reporting, including Defendants' misrepresentations, misstatements, and omissions contained in the project financial statements, as well as Defendants' failure to comply with GAAP and project accounting. As a fiduciary, the Foundation has a strict duty to account for funds entrusted to it honestly, accurately, and completely. Without such an accounting, MobilizeGreen has determined that the Defendants' financial mismanagement directly caused the project's director (Plaintiff Allen) and the

Project's reputation to be negatively affected and for the sub-recipients to withdraw from further participation on additional projects with MobilizeGreen.

101.    Defendant Brown's false, malicious, and published defamatory statements, which were condoned by Foundation officers, also damaged Ms. Allen's reputation, business interests, and profession.

102.    The Defendants' misconduct alleged in the complaint was the direct and proximate cause of the damage to Plaintiffs.

## COUNT I

### Breach of Fiduciary Duty
### (All Defendants)

103.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 102 above.

104.    A fiduciary relationship existed between Plaintiffs and the Foundation by virtue of the facts and circumstances of their relationship.

105.    MobilizeGreen and Ms. Allen reposed trust and confidence in the Foundation in all of its financial and administrative matters with respect to its fiscally sponsored Project, surrendering control over its business, goodwill, and money.  As such, Plaintiffs were completely dependent on the Foundation to carry out the terms and conditions of the Project with expertise and good faith.

106.    Defendant CFNCR breached its fiduciary duties to Plaintiffs including, but not limited to, by failing to pay Project bills in a timely manner; providing incompetent fiscal sponsor services and advice; failing to provide an honest, accurate, or complete accounting and financial statements; and failing to disclose relevant and material information within the scope of the Foundation's fiscal sponsorship.

107.    The Foundation breached its fiduciary duty to MobilizeGreen with intent to further the Foundation's own self-interest and with intent to induce MobilizeGreen to rely on and act in a manner alleged in the complaint.

108.   MobilizeGreen was damaged as a direct and proximate result of the Foundation's breach of fiduciary duty, in an amount to be proven at trial.

## COUNT II

### Fraud
### (Defendants CFNCR and Brown)

109.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 108 above.

110.   Defendant CFNCR and Brown knowingly, and with intent to defraud, made misrepresentations of material facts and omissions to Plaintiffs including but not limited to:

    a.   Manipulating, falsifying, or altering accounting records or supporting documents from which MobilizeGreen's financial statements were prepared:

        i.   On May 15, 2012, the Foundation received a vendor invoice in the amount of $22,122.00. The Foundation paid and reported the liability as incurred on June 27, 2012, and listed it on MobilizeGreen's financial statement, ending June 30, 2012, as such. Yet, the Foundation submitted to the government a March 31, 2012 Financial Report Form 425, claiming that the Foundation had accrued the $22,122.00 expense by March 31, 2012.

    b.   Misrepresenting in or intentionally omitting from the financial statements of events, transactions, or other significant information:

        i.   MobilizeGreen's final financial statement of activities from the Foundation, received on September 13, 2013, listed a total of $36,268.30 in "other" expenses; yet the statement intentionally omits identifying these material transactions, which total almost 20% of MobilizeGreen's total Fund amount.

        ii.   On October 16, 2012, Defendant Brown requested an additional $5,196.17 from the Forest Service after the Project ended. The amount requested was not disclosed on the relevant financial statement, ending September 30, 2012.

    c.   Intentionally misapplying accounting principles relating to amounts, classification, manner of presentation, or disclosure:

        i.   The Foundation received $31,262.98 in incurred expenses from Project vendors before September 30, 2012. The Foundation used these expenses as its final September 30, 2012 accounting. The government closed out the Project on September 30, 2012, approving payment for all expenses accrued as of September 30, 2012. Yet, the Foundation used cash basis accounting to report such expenses on the wrong financial statement reporting period, which ended December 31, 2012.

111. The misrepresentations and omissions were false and misleading at the time they were made.

112. Defendants Foundation, Brown, and Hansen made all of these misrepresentations and/or omissions without regard to their truthfulness, with intent to deceive MobilizeGreen, and with intent to induce MobilizeGreen to rely on the misrepresentations in the financial statements.

113. Defendants Foundation and Brown's misrepresentations and omissions in fact deceived MobilizeGreen.

114. MobilizeGreen reasonably and justifiably relied to its detriment on the Defendants Foundation and Brown's misrepresentations and/or omissions.

115. MobilizeGreen was damaged as a direct and proximate result of the Defendants Foundation and Brown's fraud, in an amount to be proven at trial.

### COUNT III

### Negligence
### (All Defendants)

116. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 115 above.

117. Defendant CFNCR owed MobilizeGreen a duty of care in providing expert and competent fiscal sponsor services to MobilizeGreen.

118. Defendant CFNCR breached that duty by negligently failing to provide fiscal sponsor services and advice in accordance with its duties.

119. MobilizeGreen was damaged as a direct and proximate result of the Foundation's negligence, in an amount to be proven at trial.

### COUNT IV

### Breach of Contract
### (Defendant CFNCR)

120. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 102 above.

121.     Defendant CFNCR's "Agreement to Create a Sponsored Program Fund," dated on or about July 28, 2011, constituted a valid and enforceable contract under which the Foundation promised to allow MobilizeGreen to transfer to another fiscal sponsor and manage MobilizeGreen's Project Funds.

122.     MobilizeGreen fully performed its obligations under the contract except those it was preventing from performing or those that were waived by the Defendants' misconduct alleged in the complaint.

123.     Defendant CFNCR materially breached the contract by failing to perform the services it agreed to provide to transfer the Project as set forth in the contract.

124.     MobilizeGreen was damaged as a direct and proximate result of the Foundation's breach of contract, in an amount to be proven at trial.

## COUNT V

### Defamation
### (Defendant Brown)

125.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 102 above.

126.     Plaintiff Allen is a private figure.

127.     Defendant Brown published the written and verbal defamatory statements without privilege to third parties.

128.     The defamation is clear from the false statements themselves or by implication, omission, and/or innuendo that may require extrinsic facts not contained in the statements.

129.     Defendant Brown made the statements with actual malice knowing the statements were false or made the statements with reckless disregard for whether the statements were false when she published them.

130.     Defendant Brown's actions were willful, wanton, and malicious, and made with intent to harm Plaintiff Allen's reputation, business interests, and profession.

- 28 -

131.    Alternatively, Defendant Brown made the defamatory statements by failing to act with a reasonable level of care to determine whether or not the statements were false when she published them.

132.    Plaintiff Allen has suffered and continues to suffer substantial injury to her reputation, business interests, and profession.

## COUNT VI

### Defamation *Per Se*
### (Defendant Brown)

133.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 102 above.

134.    Defendant Brown published defamatory statements regarding Plaintiff Allen falsely billing the government for services constitutes defamation *per se* because it imputes to Plaintiff Allen of commission of a crime for which she can be indicted and convicted criminally.  See 31 U.S. Code § 3730 of the False Claims Act.

135.·    As defamation *per se*, Plaintiff Allen's reputation, business interests, and profession have been damaged.

## COUNT VII

### Negligent Supervision
### (Defendants CFNCR, Freeman, Hanson, and Jones-Hackley)

136.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 115 above.

137.    Defendant Brown is and was at all relevant times an employee of the Foundation and/or under the control and supervision of Defendants Foundation, Freeman, Hanson, and Jones-Hackley when Defendant Brown engaged in the incompetent, malicious, and defamatory conduct alleged in the complaint.

138.    Defendants Foundation, Freeman, Hanson, and Jones-Hackley had multiple warnings about Defendant Brown's wrongful conduct but intentionally and recklessly dismissed obvious signs of misconduct, including excessive delays in Fund payments, the inability to produce standard project

financial statements, the Forest Service's intervention regarding lack of performance under the Project Agreement, Plaintiff's letter, dated September 11, 2012, to Defendant Freeman "blowing the whistle" on Defendant Brown, and the inability of Defendant Brown to prepare and submit to the Forest Service basic documentation required under the Project Agreement, among other signs of misconduct.

139.    If Defendants Foundation, Freeman, Hanson, and Jones-Hackley had properly supervised Defendant Brown, had in place proper internal controls, and exercised their fiduciary duties with reasonable care, they would have learned of and stopped Defendant Brown's wrongful and damaging conduct.

140.    MobilizeGreen was damaged as a direct and proximate result of the Defendants Foundation, Freeman, Hanson, and Jones-Hackleys' negligent supervision, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

1.    An award of actual compensatory damages is warranted in an amount of not less than $3,313,292 for Plaintiffs;

2.    An award of punitive damages is warranted as a result of the fraud, breach of fiduciary duty, and other misconduct, which was willful, wanton, and outrageous;

3.    An award of costs, including reasonable attorneys' fees; and

4.    A grant of such other and further relief as the Court may deem just and equitable in these circumstances.

Plaintiffs demand judgment against Defendant Brown for the Count of Defamation, as follows:

1.    An award of actual compensatory damages in an amount to be determined at trial;

2.    An award of punitive damages is warranted as a result of Defendant Brown's willful, wanton, and outrageous conduct in an amount to be determined at trial;

3.    An award of costs, including reasonable attorneys' fees; and

4.    A grant of such other and further relief as the Court may deem just and equitable

in these circumstances.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  Washington, DC
        September 12, 2014

Lorelie S. Masters (DC Bar No. 358686)
Koorosh Talieh (DC Bar No. 444441)
Jonathan L. Cloar (DC Bar No. 1018494)
PERKINS COIE LLP
700 13th Street, NW, Suite 700
Washington, DC  20005
Tel.:  202-654-6289
Fax:  202-654-9120
Email:  Lmasters@perkinscoe.com


TRYON   www.T3InfoSystems.com

*Tab A*
*Contents*

## AGREEMENT TO CREATE A SPONSORED PROGRAM FUND

This agreement is made between ___Mobilize Green_____ (Organization) and the Community Foundation for the National Capital Region (the Foundation) to create a Sponsored Program Fund.

<u>Terms and Conditions</u>

The undersigned Organization irrevocably gives or pledges to give to the Foundation the property listed on the attached Schedule "A" to create the Fund. Upon acceptance by the Foundation, the Foundation will administer the Fund upon the following terms:

(1) NAME OF FUND  The name of the fund created hereby is: Mobilize Green Fund.

(2)  INITIAL CONTRIBUTION   The Organization has transferred and delivered to the Foundation the property described in Schedule A attached hereto and made a part of this agreement. The Fund shall include this initial gift, such property as may from time to time be transferred to the Foundation for inclusion in the Fund by the Organization and/or from any other source, and all undistributed income from the initial gift and any future transfers.

(3) INCORPORATION OF GOVERNING INSTRUMENTS OF THE FOUNDATION  The Foundation acknowledges receipt of the initial contribution and agrees to hold and administer such contribution and any subsequent contributions to the Fund, on the terms and subject to the conditions set forth in the Foundation's governing instruments, including its articles of incorporation and bylaws, as amended from time to time, and any resolutions and procedures from time to time in effect. All the provisions of such governing instruments of the Foundation and such resolutions and procedures are incorporated in this Document and by this reference made a part thereof.

(4) PURPOSES  The purpose of the Fund is to further or carry out the educational and charitable uses and purposes of the Foundation, as more specifically set forth in its articles of incorporation and bylaws, as amended from time to time.

(5) DISTRIBUTIONS  Distributions from the Fund shall be made upon recommendation of the Organization as communicated by its authorized officer.

(6) ASSESSMENT OF THE FUND  The Fund shall be assessed an annual administrative fee of 2% of contributions, charged quarterly (minimum fee is $500 annually). In cases where the Organization requests extraordinary services, additional charges may be made by mutual agreement between the Organization and the Foundation.

(7)  THE FUND AS COMPONENT OF THE FOUNDATION    It is intended that the Fund be a component part of the Foundation and not a separate trust, and that nothing in this Agreement shall affect the status of the Foundation as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and as an organization which is not a private foundation within the meaning of Section 509(a) of the Code.    This Agreement shall be interpreted to conform to the requirements of the foregoing provisions of the federal tax laws and any regulations issued pursuant thereto.    The Foundation is authorized to amend this Agreement to conform to the provisions of any applicable law or government regulation in order to carry out the purposes of this Fund.  References herein to provisions of the Internal Revenue Code of 1986, as amended, shall be deemed references to the corresponding provisions of any future Internal Revenue Code.

(8) DURATION  This fund is established to provide temporary fiscal sponsorship for a period not to exceed November 1, 2011, at which time the Organization will transfer to another fiscal sponsor.

IN WITNESS WHEREOF Organization has caused this Agreement to be executed as of this day, of _____, 2011.

ORGANIZATION:

BY:

TITLE:


This Agreement and Initial Contribution is accepted by the Community Foundation for the National Capital Region to be administered by it on the above terms on this _26th_ day, of July , 2011.

COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL REGION

BY: _____     Terri Lee Freeman

SCHEDULE A

Description of property delivered to the Community Foundation for the National Capital Region pursuant to Agreement dated_____.

(7) THE FUND AS COMPONENT OF THE FOUNDATION  It is intended that the Fund be a component part of the Foundation and not a separate trust, and that nothing in this Agreement shall affect the status of the Foundation as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and as an organization which is not a private foundation within the meaning of Section 509(a) of the Code.  This Agreement shall be interpreted to conform to the requirements of the foregoing provisions of the federal tax laws and any regulations issued pursuant thereto.  The Foundation is authorized to amend this Agreement to conform to the provisions of any applicable law or government regulation in order to carry out the purposes of this Fund. References herein to provisions of the Internal Revenue Code of 1986, as amended, shall be deemed references to the corresponding provisions of any future Internal Revenue Code.

(8) DURATION  This fund is established to provide temporary fiscal sponsorship for a period not to exceed November 1, 2011, at which time the Organization will transfer to another fiscal sponsor.

IN WITNESS WHEREOF Organization has caused this Agreement to be executed as of this day, of _July 28th_, 2011.

ORGANIZATION:  _Mobilizegreen_

BY:  _Leah Allen_

TITLE:  _President_

This Agreement and Initial Contribution is accepted by the Community Foundation for the National Capital Region to be administered by it on the above terms on this _26th_ day, of _July_, 2011.

COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL REGION

BY:  _Terri Lee Freeman_

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

MobilizeGreen, Inc. and Leah Allen

Case Number: 14 - 0 0 0 5 7 6 4

vs

Date: September 12, 2014

The Community Foundation for the National Capital Region, et al.

[X] One of the defendants is being sued in their official capacity.

| Name: *(Please Print)*   Koorosh Talieh | Relationship to Lawsuit |
|---|---|
| Firm Name: Perkins Coie LLP | [X] Attorney for Plaintiff |
| | [ ] Self (Pro Se) |
| Telephone No.:          Six digit Unified Bar No.: <br> 202-434-1688                     444441 | [ ] Other: _____ |

TYPE OF CASE: [ ] Non-Jury       [ ] 6 Person Jury       [X] 12 Person Jury

Demand: $_____       Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____       Judge: _____       Calendar #:_____

Case No.:_____       Judge: _____       Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

### A. CONTRACTS

COLLECTION CASES

| | | |
|---|---|---|
| [X] 01 Breach of Contract | [ ] 07 Personal Property | [ ] 14 Under $25,000 Pltf. Grants Consent |
| [ ] 02 Breach of Warranty | [ ] 09 Real Property-Real Estate | [ ] 16 Under $25,000 Consent Denied |
| [ ] 06 Negotiable Instrument | [ ] 12 Specific Performance | [ ] 17 OVER $25,000 Pltf. Grants Consent |
| [ ] 15 Special Education Fees | [ ] 13 Employment Discrimination | [ ] 18 OVER $25,000 Consent Denied |
| [ ] 10 Mortgage Foreclosure | | |

### B. PROPERTY TORTS

| | | |
|---|---|---|
| [ ] 01 Automobile | [ ] 03 Destruction of Private Property | [ ] 05 Trespass |
| [ ] 02 Conversion | [ ] 04 Property Damage | [ ] 06 Traffic Adjudication |
| [ ] 07 Shoplifting, D.C. Code § 27-102 (a) | | |

### C. PERSONAL TORTS

| | | |
|---|---|---|
| [ ] 01 Abuse of Process | [ ] 09 Harassment | [ ] 17 Personal Injury- (Not Automobile, Not Malpractice) |
| [ ] 02 Alienation of Affection | [ ] 10 Invasion of Privacy | [ ] 18 Wrongful Death (Not Malpractice) |
| [ ] 03 Assault and Battery | [ ] 11 Libel and Slander | [ ] 19 Wrongful Eviction |
| [ ] 04 Automobile- Personal Injury | [ ] 12 Malicious Interference | [ ] 20 Friendly Suit |
| [ ] 05 Deceit (Misrepresentation) | [ ] 13 Malicious Prosecution | [ ] 21 Asbestos |
| [ ] 06 False Accusation | [ ] 14 Malpractice Legal | [ ] 22 Toxic/Mass Torts |
| [ ] 07 False Arrest | [ ] 15 Malpractice Medical (Including Wrongful Death) | [ ] 23 Tobacco |
| [ ] 08 Fraud | [ ] 16 Negligence- (Not Automobile, Not Malpractice) | [ ] 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE [ ] IF USED

CV-496/Jun 13

# Information Sheet, Continued

**C. OTHERS**

- 01 Accounting
- 02 Att. Before Judgment
- 04 Condemnation (Emin. Domain)
- 05 Ejectment
- 07 Insurance/Subrogation
  Under $25,000 Pltf.
  Grants Consent
- 08 Quiet Title
- 09 Special Writ/Warrants
  (DC Code § 11-941)

- 10 T.R.O./ Injunction
- 11 Writ of Replevin
- 12 Enforce Mechanics Lien
- 16 Declaratory Judgment
- 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- 18 Product Liability
- 24 Application to Confirm, Modify,
  Vacate Arbitration Award
  (DC Code § 16-4401)

- 25 Liens: Tax/Water Consent Granted
- 26 Insurance/ Subrogation
  Under $25,000 Consent Denied
- 27 Insurance/ Subrogation
  Over $25,000 Pltf. Grants Consent
- 28 Motion to Confirm Arbitration
  Award (Collection Cases Only)
- 29 Merit Personnel Act (OHR)
- 30 Liens: Tax/ Water Consent Denied
- 31 Housing Code Regulations
- 32 Qui Tam
- 33 Whistleblower
- 34 Insurance/Subrogation
  Over $25,000 Consent Denied

**II.**

- 03 Change of Name
- 06 Foreign Judgment
- 13 Correction of Birth Certificate
- 14 Correction of Marriage
  Certificate

- 15 Libel of Information
- 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-1519 (a)]
- 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- 21 Petition for Subpoena
  [Rule 28-I (b)]
- 22 Release Mechanics Lien
- 23 Rule 27(a) (1)
  (Perpetuate Testimony)
- 24 Petition for Structured Settlement
- 25 Petition for Liquidation

_____
Attorney's Signature

9/12/14
_____
Date

CV-496/Jun 13

Filed
D.C. Superior Court
10/06/2014 10:44AM
Clerk of the Court

### IN THE SUPERIOR COURT
### FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| MobilizeGreen, Inc.. | | |
| 1200 18th Street, NW, #700 | * | |
| Washington, DC 20036 | * | Case No. 14-0005764 |
| | * | |
| Leah Allen | * | |
| 1200 18th Street, NW, #700 | * | |
| Washington, DC 20036 | * | Judge Herbert B. Dixon, Jr. |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Next Court Date: December 12, 2014 |
| The Community Foundation for the | * | Event: Initial Scheduling Conference |
| National Capital Region | * | |
| 1201 15th Street NW, Suite 420 | * | |
| Washington, DC 20005 | * | |
| | * | |
| Terri Lee Freeman, in her capacity as President | * | |
| of The Community Foundation for the | * | |
| National Capital Region | * | |
| 1201 15th Street NW, Suite 420 | * | |
| Washington, DC 20005 | * | |
| | * | |
| Mark B. Hansen, in his capacity as the Chief | * | |
| Financial Officer of The Community Foundation | * | |
| for the National Capital Region | * | |
| 1201 15th Street NW, Suite 420 | * | |
| Washington, DC 20005 | * | |
| | * | |
| Angela Jones Hackley, in her capacity as Vice | * | |
| President of Philanthropic Services of | * | |
| The Community Foundation for the | * | |
| National Capital Region | * | |
| 1201 15th Street NW, Suite 420 | * | |
| Washington, DC 20005 | * | |
| | * | |
| Adrienne Brown, individually and in her capacity | * | |
| as Director of Finance & Accounting of | * | |
| The Community Foundation for the | * | |
| National Capital Region | * | |
| 1201 15th Street NW, Suite 420 | * | |
| Washington, DC 20005 | * | |
| Defendants. | * | |
| _____ | * | |

**CONSENT MOTION TO EXTEND TIME FOR FILING**
**RESPONSE TO PLAINTIFFS' COMPLAINT**

Defendants Community Foundation of the National Capital Region ("CFNCR"), Terri Lee Freeman, Mark Hansen, Angela Jones Hackley and Adrienne Brown respectfully submit this Consent Motion to extend the time for filing a response to Plaintiffs' Complaint to on or before Thursday, October 9, 2014.  This is only two days after Defendants' response is presently due, as Defendants were served with the Complaint on September 17, 2014.

Plaintiffs consent to the requested extension.

Good cause exists to extend the deadline for filing a response to the Complaint by two days because the Jewish high holidays, which Defendants' counsel observe, fell in the middle of the 20-day period Defendants are given under SCR-Civil 12 to evaluate the allegations in Plaintiffs' Complaint and prepare a response.

WHEREFORE, for the foregoing reasons, Defendants, with Plaintiffs' consent, respectfully move the Court to extend the time to file their response to Plaintiffs' Complaint to on or before Thursday, October 9, 2014.

For the Court's convenience, a proposed order is attached.

Rule 12-I Certification

Undersigned counsel certifies that they sought consent to the relief sought in this Motion from Plaintiffs' counsel and that Plaintiffs' counsel consented.

Dated:  October 6, 2014                    Respectfully submitted,


                                  _____/s/_____
                                  Seth A. Rosenthal (D.C. Bar No. 482586)
                                  Benjamin E. Horowitz (D.C. Bar No. 1017262)
                                  Venable LLP
                                  575 7th Street, N.W.
                                  Washington, DC  20004-1601
                                  (202) 344-4000 (phone)
                                  (202) 344-8300 (fax)
                                  sarosenthal@venable.com
                                  behorowitz@venable.com

                                  *Attorneys for Defendants Community Foundation of
                                  the National Capital Region, Terri Lee Freeman,
                                  Mark Hansen, Angela Jones Hackley and Adrienne
                                  Brown*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2014, the foregoing *Consent Motion to Extend Time for Filing Defendants' Response to Plaintiffs' Complaint* was served via the CaseFile Xpress electronic filing service upon all counsel of record and the judge assigned to the case, and as follows:

By Email

Lorelie S. Masters, Esq.
Koorosh Talieh, Esq.
Jonathan Cloar, Esq.
PERKINS COIE LLP
700 13th Street, NW, Suite 700
Washington, DC 20005
Tel.:  202-654-6289
Fax:  202-654-9120
Emails:  LMasters@perkinscoie.com
            KTalieh@perkinscoie.com
            JCloar@ perkinscoie.com


_____
                /s/
Seth A. Rosenthal, Esq.

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

MobilizeGreen, Inc..
1200 18th Street, NW, #700
Washington, DC 20036                           *            Case No. 14-0005764
                                                            *
Leah Allen                                                  *
1200 18th Street, NW, #700                     *
Washington, DC 20036                           *
                            Plaintiffs,        *            Judge Herbert B. Dixon, Jr.
                                                            *
        v.                                                  *
                                                            *            Next Court Date: December 12, 2014
The Community Foundation for the               *            Event: Initial Scheduling Conference
National Capital Region                        *
1201 15th Street NW, Suite 420                 *
Washington, DC 20005                           *
                                                            *
Terri Lee Freeman, in her capacity as President *
of The Community Foundation for the            *
National Capital Region                        *
1201 15th Street NW, Suite 420                 *
Washington, DC 20005                           *
                                                            *
Mark B. Hansen, in his capacity as the Chief    *
Financial Officer of The Community Foundation  *
for the National Capital Region                *
1201 15th Street NW, Suite 420                 *
Washington, DC 20005                           *
                                                            *
Angela Jones Hackley, in her capacity as Vice   *
President of Philanthropic Services of          *
The Community Foundation for the               *
National Capital Region                        *
1201 15th Street NW, Suite 420                 *
Washington, DC 20005                           *
                                                            *
Adrienne Brown, individually and in her capacity *
as Director of Finance & Accounting of          *
The Community Foundation for the               *
National Capital Region                        *
1201 15th Street NW, Suite 420                 *
Washington, DC 20005                           *
                            Defendants.         *
_____      *

5

**[PROPOSED] ORDER**

Upon consideration of the Defendants' Consent Motion to Extend Time for Filing

Response to Plaintiffs' Complaint, it is ORDERED that:

    1.      The Consent Motion be and hereby is GRANTED;

    2.      Defendants' response to Plaintiffs' Complaint shall be filed on or before

Thursday, October 9, 2014; and

    3.      The Clerk of the Court mail copies of this Order to all counsel of record.

    SO ORDERED.


ENTERED:  _____                    _____

                                                  Judge Herbert B. Dixon, Jr.

Copies to:

Lorelie S. Masters, Esq.
Koorosh Talieh, Esq.
Jonathan Cloar, Esq.
PERKINS COIE LLP
700 13th Street, NW, Suite 700
Washington, DC 20005

*Counsel for Plaintiffs*


Seth A. Rosenthal, Esq.
Benjamin E. Horowitz, Esq.
Venable LLP
575 7th Street, N.W.
Washington, DC  20004-1601

*Counsel for Defendants*

## DISTRICT OF COLUMBIA COURTS

D.C. Courts Home

# Court Cases Online

**Click here to view search criteria**

Case Search for: 2014 CA 5764

Search retrieved 1 case in less than a second.

**Click here to view search results**

All retrieved cases available for view

Viewing single case; Details retrieved in less than a second.

**Click here to view case summary**

| 2014 CA 005764 B: MOBILIZEGREEN, INC., et al. Vs. THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL, et al. | |
|---|---|
| Case Type: Civil II | File Date: 09/12/2014 |
| Status: Open | Status Date: 09/12/2014 |
| Disposition: Undisposed | Disposition Date: |

| Party Name | Party Alias(es) | Party Type | Attorney(s) |
|---|---|---|---|
| MOBILIZEGREEN, INC. | | PLAINTIFF | TALIEH, Mr KOOROSH |
| ALLEN, LEAH | | PLAINTIFF | TALIEH, Mr KOOROSH |
| THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL | | Defendant | ROSENTHAL, Mr SETH A |
| FREEMAN, TERRY LEE | | Defendant | ROSENTHAL, Mr SETH A |
| HANSEN, MARK B. | | Defendant | ROSENTHAL, Mr SETH A |
| HACKLEY, ANGELA JONES | | Defendant | ROSENTHAL, Mr SETH A |
| BROWN, ADRIENNE | | Defendant | ROSENTHAL, Mr SETH A |

| Schedule Date | Schedule Time | Description |
|---|---|---|
| 12/12/2014 | 09:30 AM | Initial Scheduling Conference-60 |

| Docket Date | Description | Messages |
|---|---|---|
| 10/08/2014 | Order Filed | Order Granting Consent Motion to Extend Time for Filing Response to Plaintiffs' Complaint Signed by Judge Dixon on 10/08/2014. Submitted 10/08/2014 15:00 jhc. |
| 10/08/2014 | Order Granting Motion * Entered on the Docket | Order Granting Consent Motion to Extend Time for Filing Response to Plaintiffs' Complaint Entered on the Docket. Signed in chambers by Judge Dixon on October 8, 2014. Docketed, efiled, and served by chambers on October 8, 2014. smp |
| 10/06/2014 | Motion to Extend Time to Answer to Complaint Filed | Consent Motion to Extend Time for Filing Response to Plaintiffs' Complaint Filed. submitted 10/06/2014 10:44.rp Attorney: ROSENTHAL, Mr SETH A (482586) THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL (Defendant); TERRY LEE FREEMAN (Defendant); MARK B. HANSEN (Defendant); ANGELA JONES HACKLEY (Defendant); ADRIENNE BROWN (Defendant); Receipt: 292888 Date: 10/07/2014 |
| 09/19/2014 | Affidavit of Service of Summons & Complaint on | Affidavit of Service of Summons & Complaint on ADRIENNE BROWN (Defendant); on 9/17/14 |
| 09/19/2014 | Proof of Service | Proof of Service Method : Service Issued Issued : 09/12/2014 Service : Summons Issued Served : 09/17/2014 Return : 09/19/2014 On : BROWN, ADRIENNE Signed By : MARK B. HANSEN  Reason : Proof of Service Comment :  Tracking #: 5000150855 |
| 09/19/2014 | Affidavit of Service of Summons & Complaint on | Affidavit of Service of Summons & Complaint on ADRIENNE BROWN (Defendant); |
| 09/19/2014 | Proof of Service | Proof of Service Method : Service Issued Issued : 09/12/2014 Service : Summons Issued |

| | | |
|---|---|---|
| | | Served : 09/17/2014<br>Return : 09/19/2014<br>On : HACKLEY, ANGELA JONES<br>Signed By : MARK B. HANSEN<br><br>Reason : Proof of Service<br>Comment :<br><br>Tracking #: 5000150854 |
| 09/19/2014 | Affidavit of Service of Summons & Complaint on | Affidavit of Service of Summons & Complaint on ANGELA JONES HACKLEY (Defendant); |
| 09/19/2014 | Proof of Service | Proof of Service<br>Method : Service Issued<br>Issued : 09/12/2014<br>Service : Summons Issued<br>Served : 09/17/2014<br>Return : 09/19/2014<br>On : HANSEN, MARK B.<br>Signed By :<br><br>Reason : Proof of Service<br>Comment :<br><br>Tracking #: 5000150853 |
| 09/19/2014 | Affidavit of Service of Summons & Complaint on | Affidavit of Service of Summons & Complaint on MARK B. HANSEN (Defendant); |
| 09/19/2014 | Proof of Service | Proof of Service<br>Method : Service Issued<br>Issued : 09/12/2014<br>Service : Summons Issued<br>Served : 09/17/2014<br>Return : 09/19/2014<br>On : FREEMAN, TERRY LEE<br>Signed By : MARK B. HANSEN<br><br>Reason : Proof of Service<br>Comment :<br><br>Tracking #: 5000150852 |
| 09/19/2014 | Affidavit of Service of Summons & Complaint on | Affidavit of Service of Summons & Complaint on TERRY LEE FREEMAN (Defendant); |
| 09/19/2014 | Proof of Service | Proof of Service<br>Method : Service Issued<br>Issued : 09/12/2014<br>Service : Summons Issued<br>Served : 09/17/2014<br>Return : 09/19/2014<br>On : THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL<br>Signed By : MARK B. HANSEN<br><br>Reason : Proof of Service<br>Comment :<br><br>Tracking #: 5000150851 |
| 09/19/2014 | Affidavit of Service of Summons & Complaint on | Affidavit of Service of Summons & Complaint on THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL (Defendant); |
| 09/12/2014 | Service Issued | Issue Date: 09/12/2014<br>Service: Summons Issued<br>Method: Service Issued<br>Cost Per: $<br><br>THE COMMUNITY FOUNDATION FOR THE NATIONAL CAPITAL<br>1201 15th Street NW<br>Suite 420<br>WASHINGTON, DC 20005<br>Tracking No: 5000150851<br><br>FREEMAN, TERRY LEE<br>1201 15th Street NW<br>Suite 420<br>WASHINGTON, DC 20005<br>Tracking No: 5000150852<br><br>HANSEN, MARK B.<br>1201 15th Street NW<br>Suite 420<br>WASHINGTON, DC 20005<br>Tracking No: 5000150853<br><br>HACKLEY, ANGELA JONES<br>1201 15th Street NW<br>Suite 420<br>WASHINGTON, DC 20005<br>Tracking No: 5000150854<br><br>BROWN, ADRIENNE<br>Indiv. and in her capacity as Director of Finance |

| | | |
|---|---|---|
| | | 1201 15th Street NW, Suite 420<br>WASHINGTON, DC 20005<br>Tracking No: 5000150855 |
| 09/12/2014 | Event Scheduled | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 12/12/2014 Time: 9:30 am<br>Judge: DIXON JR, HERBERT B Location: Courtroom 415 |
| 09/12/2014 | Complaint for Breach of Contract Filed | Complaint for Breach of Contract Filed.<br>Attorney: TALIEH, Mr KOOROSH (444441)<br>MOBILIZEGREEN, INC. (PLAINTIFF); Receipt: 290939 Date: 09/12/2014 |

| Receipt # | Date | From | Payments | | Fee | | Amount Paid |
|---|---|---|---|---|---|---|---|
| 292888 | 10/07/2014 | ROSENTHAL, Mr SETH A | Efile | $20.00 | Cost | $20.00 | $20.00 |
| 290939 | 09/12/2014 | TALIEH, Mr KOOROSH | Cc | $120.00 | Cost | $120.00 | $120.00 |