UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
MobilizeGreen, Inc., *et al*,                   )
                                                )
                Plaintiffs,                     )
                                                )
        v.                                      )        Civil Action No.  14-1698 (RMC)
                                                )
The Community Foundation for the                )
National Capital Region, *et al.*,              )
                                                )
                Defendants.                     )
_____              )

## OPINION

Plaintiffs MobilizeGreen and its founder, Leah Allen (collectively MobilizeGreen), move to remand this matter to the Superior Court for the District of Columbia, where MobilizeGreen first filed suit.  Defendants The Community Foundation for the National Capital Region and its executives, Terri Lee Freeman, Mark B. Hansen, and Angela Jones Hackley (collectively the Community Foundation), having removed the case to federal court, oppose remand.  As explained below, the motion to remand will be granted.

## I.  FACTS

MobilizeGreen is a non-profit corporation organized under the laws of the District of Columbia and located in D.C.  Compl. [Dkt. 1-1] ¶ 6.  Its mission is "to build the next generation of environmental leaders, stewards, and volunteers from under-represented communities using MobilizeGreen's innovative internship, mentoring, career coaching, and collaborative partnership model."  *Id*.  Leah Green is MobilizeGreen's Founder and serves as its President.  *Id*. ¶ 7.  The Community Foundation is a 501(c)(3)[1] non-profit organization based in

_____

[1] Certain organizations can become exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code.  "Corporations . . . organized and operated exclusively for

1

the District of Columbia that "manages donor-advised funds, gives grants to non-profits, and fiscally sponsors new organizations." *Id.* ¶ 16.

In 2011, MobilizeGreen proposed to develop a "national diversity internship pilot program" (Internship Project) for the U.S. Forest Service, an agency of the U.S. Department of Agricultur.  The Forest Service agreed to provide funding for the Internship Project.  *Id.* ¶ 18.  As "a then new non-profit with no employees, no revenues, and no federal or state tax-exempt status," MobilizeGreen asked the Community Foundation to serve as its fiscal sponsor.  *Id.* "Fiscal sponsorship is a relationship between a tax exempt organization like [the Community Foundation] that serves as the official recipient of charitable donations for a new or smaller organization that is not yet recognized as tax-exempt."  *Id.* ¶ 16.  The Community Foundation agreed to serve as a temporary fiscal sponsor for MobilizeGreen.  *Id.* ¶ 21.  To that end, the parties executed an Agreement to Create a Sponsored Program Fund on July 28, 2011, which was "established to provide temporary fiscal sponsorship for a period not to exceed November 1, 2011, at which time [MobilizeGreen] will transfer to another fiscal sponsor."  *See* Opp'n, Ex. 1 [Dkt. 13-1] (Sponsor Agreement) at 2.  As consideration for the services provided by the Community Foundation to MobilizeGreen, MobilizeGreen agreed to pay an annual administrative fee of two percent of monies managed under the Sponsor Agreement.  *See id.* at 1.

Shortly after entering into the Sponsor Agreement, the Community Foundation executed a Challenge Cost Share Agreement with the Forest Service, which awarded funds to the Community Foundation as authorized under the Interior and Related Appropriations Act of 1992.

---

religious, charitable, scientific, testing for public safety, literary, or educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual" are eligible for exemption from taxation.  26 U.S.C. § 501(a), (c)(3).

*See* Opp'n, Ex. 2 [Dkt. 13-2] (Forest Service Agreement) at 1.  The stated purpose of the

agreement was:

> to document the cooperation between the parties to help build the
> next generation of environmental leaders, stewards, and volunteers
> from under-represented and minority communities through a new
> national program of the Community Foundation for National Capital
> Region, a program called MobilizeGreen, in accordance with the
> following provisions . . . .

*Id.* at 2.  The Forest Service agreed to reimburse the Community Foundation for actual expenses

incurred for the Internship Project, up to a maximum of $273,805.  Compl. ¶ 23.  The

Community Foundation was required to submit monthly invoices to the Forest Service.  *See*

Forest Service Agreement at 3.

    As relevant to the instant motion, the Complaint alleges that the Community

Foundation failed to comply with the terms of the Sponsor Agreement by, *inter alia*, failing to

transfer the Internship Project to MobilizeGreen's new fiscal sponsor, Social and Environmental

Entrepreneurs, and failing to pay legitimate Internship Project bills in a timely fashion.  Compl.

¶¶ 24-28, 30-43.  In addition, the Complaint alleges that the Community Foundation failed to

provide fiduciary oversight, financial management, and other administrative services, which

harmed MobilizeGreen.  *Id.*  ¶¶ 29-30, 44-50.

    The following seven Counts are recited in the Complaint:

- Count 1: Breach of Fiduciary Duty (All Defendants)
- Count II: Fraud (Defendants Community Foundation and Brown)
- Count III: Negligence (All Defendants)
- Count IV: Breach of Contract (Defendant Community Foundation)
- Count V: Defamation (Defendant Brown)
- Count VI: Defamation *Per Se* (Defendant Brown)
- Count VII: Negligent Supervision (Defendants CFNCT, Freeman, Hanson, and Jones Hackley)

*Id.* ¶¶ 103-140.

The Community Foundation has not yet filed an Answer to the Complaint. Instead, as indicated above, it filed a Notice of Removal and brought the case to federal court. MobilizeGreen prefers to litigate in Superior Court and seeks a remand.

## II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and the law presumes "that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  The court must respect the jurisdiction of state courts if our system of federalism is to work properly. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941).  The removing party bears the burden of establishing federal jurisdiction. *Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*, 606 F. Supp. 2d 114, 120 (D.D.C. 2009); *see also McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936). "[I]f federal jurisdiction is doubtful, a remand to state court is necessary." *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 815-16 (4th Cir. 2004) (en banc).

A plaintiff is normally the master of its own complaint and can select its own court, even if it means forgoing remedies that might be available elsewhere. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  In addition, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* Accordingly, it "cannot be predicated on an actual or anticipated defense: 'It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).  On the other hand, if a complaint satisfies the requirements of federal jurisdiction, a

4

defendant has a right to have a federal court hear the matter.  The Community Foundation cited

28 U.S.C. §§ 1441,[2] 1442 and 1446[3] as the bases for removal.

### III.  ANALYSIS

The Community Foundation argues that this Court has subject matter jurisdiction

under 28 U.S.C. § 1441 because MobilizeGreen's breach of fiduciary duty and breach of contract

claims necessarily raise substantial, disputed questions of federal law.  The Community

Foundation also argues that the Federal Officer Removal Statute provides an independent basis

for federal jurisdiction because it was acting at all times under the direction of the Forest Service.

### A.  Federal Officer Removal Statute

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), provides in relevant

part that:

> A civil action . . . commenced in a State court and that is against or
> directed to any of the following may be removed by them to the
> district court of the United States for the district and division
> embracing the place wherein it is pending: (1) The United States or
> any agency thereof or any officer (*or any person acting under that
> officer*) of the United States or of any agency thereof, sued in an
> official or individual capacity.

(Emphasis added).  "Four elements are required for removal under § 1442(a)(1): (1) a defendant

has acted under the direction of a federal officer, (2) there was a causal connection between the

defendant's actions and the official authority, (3) the defendant has a colorable federal defense to

---

[2] 28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district
courts of the United States have original jurisdiction, may be removed by the defendant or the
defendants, to the district court of the United States for the district and division embracing the
place where such action is pending." 28 U.S.C. § 1441(a).  As relevant here, the original
jurisdiction of a federal district court is defined by 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1446 sets forth the procedures for removal.  There is no dispute regarding the
procedural propriety of the Community Foundation's notice of removal.

the plaintiff's claims, and (4) the defendant is a 'person,' within the meaning of the statute."

*Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012).  The burden of

establishing the existence of federal jurisdiction under section 1142(a)(1) is upon the removing

party.  *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

       The well-pleaded complaint rule, *see Caterpillar*, 482 U.S. at 392, does not

preclude reliance on the Federal Officer Removal Statute if a colorable federal defense exists as

to some claims and they otherwise meet the statute's four criteria.  *See Jefferson County, Ala. v.

Acker*, 527 U.S. 423, 431 (1999) ("Under the federal officer removal statute, suits against federal

officers may be removed despite the nonfederal cast of the complaint; the federal-question

element is met if the defense depends on federal law.").  MobilizeGreen does not dispute that the

Community Foundation is a "person," as corporations are deemed "persons" under the statute,

*see Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998), or that the

Community Foundation has colorable federal defenses to its claims.  The points of contention are

whether the Community Foundation "acted under" the direction of a Forest Service officer and

whether a causal nexus exists between the Community Foundation's complained-of actions and

specific Forest Service directions.

       *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007) clarified the nature of the

relationship between a federal officer and a private actor that is needed to satisfy the "acting

under" requirement.  The Supreme Court held that:

> [A] private firm's compliance (or noncompliance) with federal laws,
> rules, and regulations does not by itself fall within the scope of the
> statutory phrase 'acting under' a federal 'official,' even if the
> regulation is highly detailed and even if the private firm's activities
> are highly supervised and monitored.

*Id*. at 143.  Instead, an entity "act[s] under" a federal officer when it "*assist*[s], or [] help[s] *carry*

*out*, the duties or tasks of the federal superior."  *Id*. at 152.  An express delegation of authority

may satisfy this requirement.  *See Watson*, 551 U.S. at 157.  "Cases in which the Supreme Court has approved removal involve defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government."  *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012).

The Community Foundation argues that the "acting under" requirement of Section 1142(a)(1) is satisfied because it had a partnership relationship with the Forest Service under the Forest Service Agreement, which involved close regulation and supervision, and it performed the complained-of acts under comprehensive and detailed regulations.  MobilizeGreen fails to address the contractual relationship between the Community Foundation and the Forest Service.  Nonetheless, close review of the Forest Service Agreement reveals that the Community Foundation was not assisting or helping to carry out the *duties or tasks* of the Forest Service.  To the contrary, the Community Foundation was helping to implement an outreach program that was perhaps beneficial but ancillary to the Forest Service's mandate to "manage[] 193 million acres on 155 national forests and 20 grasslands in 44 states and Puerto Rico, and help[] improve[] land stewardship outside the National Forest System."  Forest Service Agreement at 1.

The stated purpose of the Forest Service Agreement was to "document the cooperation" between the Forest Service and the Community Foundation to "help build the next generation of environmental leaders, stewards, and volunteers from under-represented and minority communities."  Forest Service Agreement at 2.  This may well have been consistent with the Forest Service's goal of increasing the capacity of its volunteer programs.  *Id*. at 1.  Agreeing to a "Statement of Mutual Benefit and Interests," the Forest Service and the Community Foundation identified the following goals for the Internship Project:

- Increase the diversity and numbers of volunteers and community partners engaged in each forest in each region;

7

- Expose diverse college students to potential careers at the Forest Service;
- Teach core content about environmental issues (climate, energy, and sustainability), professional skills, and stewardship to interns; and
- Increase youth volunteerism and stewardship.

*Id*. at 2.  Although the Forest Service Agreement stated that the Forest Service needed to improve its infrastructure for managing volunteer programs, the Community Foundation does not argue that the Forest Service is directed by Congress (or the Secretary) to increase the diversity of its volunteers or teach them core content concerning environmental issues.  The Agreement gives no indication that the Forest Service delegated authority to the Community Foundation to complete the Internship Project or that the Forest Service would have independently undertaken the Internship Project without the involvement of MobilizeGreen or the Community Foundation.[4] *See Ruppel*, 701 F.3d at 1181 ("'Acting under' covers situations . . . where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete.").

In support of its argument, the Community Foundation cites directives from a Forest Service Handbook[5] that characterize "challenge cost share agreements."  These directives, however, reinforce the Court's conclusion that the Community Foundation was not fulfilling congressionally-assigned Forest Service duties or tasks under the Forest Service Agreement.  To

---

[4] MobilizeGreen emphasizes that it—not the Community Foundation—ran the Internship Project; the Community Foundation functioned only as an intermediary between the Forest Service and MobilizeGreen to receive and disburse funds.  *See* Reply [Dkt. 14] at 8 n. 8.

[5] "Forest Service Handbooks (FSH) are the principal source of specialized guidance and instruction for carrying out the direction issued in the FSM (Forest Service Manuals).  Specialists and technicians are the primary audience of Handbook direction.  Handbooks may also incorporate external directives with related USDA and Forest Service directive supplements." *Forest Service Directives*, http://www.fs.fed.us/im/directives/ (last visited Apr. 10, 2015).

the contrary, the Forest Service Handbook states that "Challenge Cost-share Agreements (CS) are the instruments used when the Forest Service cooperatively develops, plans, and implements projects with other parties that are *mutually beneficial* to the parties and that *enhance* Forest Service activities."  FSH 1509.11 § 72.31.1 (emphasis added).  With a Challenge Cost-share Agreement, the "Forest Service and the cooperator(s) shall share *mutual interests and benefit* in the same qualitative way from the objective of the agreement."  *Id*. § 70.3 (emphasis added). Successful execution of the Internship Project could well have benefited the Forest Service and enhanced its activities, as well as those of MobilizeGreen, but such accomplishments do not satisfy the statute's "acting under" requirement, which requires direction to fulfill an agency's specific purpose.  *See, e.g., Maryland v. Soper (No. 1),* 270 U.S. 9, 30 (1926) (chauffeur acting under orders of federal prohibition agents in distillery raid "has the same right to the benefit" of the federal officer removal statute as the agents); *Winters*, 149 F.3d at 389-99 (private defense contractor satisfies "acting under" requirement when it produced Agent Orange, pursuant to strict governmental specifications, control and inspection, to help the government conduct a war); *Jacks*, 701 F.3d at 1234 (concluding that "[Federal Employees Health Benefits Act] program carriers contracting with the federal government to provide health care insurance for federal employees . . . conduct business under the delegation of the federal government"). Simply put, providing a *benefit* to a federal agency is not equivalent to *fulfilling* one of the federal agency's duties or tasks.

The Community Foundation identifies e-mail correspondence with the Forest Service's program manager as evidence that it was closely monitored and supervised by the Forest Service in its administration of federal funds to MobilizeGreen.  *See* Opp'n at 28.  This evidence reveals that on May 24, 2012, a Forest Service program manager e-mailed the

Community Foundation to notify the Community Foundation of its noncompliance with the requirements of the Forest Service Agreement, requiring the Community Foundation to submit signed monthly invoices and quarterly program performance reports. *See* Opp'n, Ex. 3; Compl. ¶ 41. The Forest Service asked to be updated immediately and proposed biweekly calls to increase Forest Service's confidence that the Community Foundation and the Forest Service could accomplish their goals. *See* Opp'n, Ex. 3. Subsequent emails from June 20, 2012 and June 26, 2012 between the Community Foundation and the Forest Service demonstrate that the Community Foundation submitted a financial report, performance report and invoices for February, March, April and May 2012, but that the invoices were not sent by the appropriate method and that the Community Foundation and Leah Allen had not joined a scheduled biweekly call. *See*, Opp'n, Ex. 4 at 1-2. An exchange of three e-mails in the course of a thirteen-month contract period[6] is hardly suggestive of close supervision and monitoring. The Forest Service Agreement was executed on August 29, 2011 and the Internship Project began on September 1, 2011, almost nine months before the first e-mail. *See* Compl. ¶¶ 23, 31. There is no other evidence that the Forest Service provided direct oversight to the Community Foundation.

The e-mails further suggest that the Forest Service decided to monitor the Community Foundation only because the Community Foundation failed to comply with the terms of the Forest Service Agreement. Critically, some of the issues that prompted the Forest Service to scrutinize the Community Foundation's actions are those that form the allegations in the Complaint. *See, e.g.,* Forest Service Agreement at 3 (requirement to submit monthly invoices to Forest Service); Compl. ¶¶ 40, 42, 43 (alleging the Community Foundation's delay in

---

[6] The Complaint alleges that the Community Foundation submitted its final accounting to the Forest Service to close out funding for the Internship Project on September 30, 2012, the project's end date. Compl. ¶¶ 57, 60.

paying bills after receiving MobilizeGreen's expense reimbursement invoice). The Community Foundation has not shown that it acted on the subjects of MobilizeGreen's Complaint at the direction of the Forest Service. *See Watson*, 551 U.S. at 147 ("The federal statute permits removal only if [Defendant], in carrying out the 'act[s]' that are the subject of the petitioners' complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'").

*Jacks* identifies four factors that must be satisfied before a district court may exercise subject matter jurisdiction under Section 1142(a)(1). Because the Court's analysis of the first factor is dispositive, the Court does not reach the other factors of the test. The Federal Officer Removal Statute does not provide an independent basis for jurisdiction in this case.

## B. Federal Question Jurisdiction

Subject matter jurisdiction may exist for removal purposes where a case involves a federal question "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A suit will arise under federal law "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law.]" *Vaden*, 556 U.S. at 60 (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also Steele v. Salb*, 681 F. Supp. 2d 34, 36 (D.D.C. 2010). "But even where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a special and small category of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. at 1065 (referencing *Grable & Sons Metal Products, Inc. v. Darue Engineering and Mfg.*, 545 U.S. 308 (2005)). A federal issue is "necessarily raised" when an essential element of a plaintiff's case "will necessarily require the application of [federal] law to the facts of [plaintiff's] case." *Gunn*, 133 S. Ct. at 1064. For a

federal issue to be "actually disputed," there must be a "dispute respecting the effect of federal

law." *Id*. at 1065-66.  To show that the federal issue is "substantial," "it is not enough that the

federal issue be significant to the particular parties in the immediate suit." *Id*. at 1066.  The

substantiality inquiry "looks instead to the importance of the issue to the federal system as a

whole." *Id*.  This last requirement seeks to ensure that resolving an issue in federal court "would

not materially affect, or threaten to affect, the normal currents of litigation" in the federal system.

*Grable*, 545 U.S. at 319.  Federal jurisdiction is favored in cases that present "a nearly pure issue

of law, the resolution of which would establish a rule applicable to numerous [other] cases."

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 681 (2006) (characterizing *Grable*).

In contrast, "'fact-bound and situation-specific' effects are not sufficient to establish federal

arising under jurisdiction." *Gunn*, 133 S. Ct. at 1068 (citing *Empire*, 547 U.S. at 701).

   The Community Foundation argues that this Court has original subject matter

jurisdiction under 28 U.S.C. § 1331 over the claim that it breached its fiduciary duty and

breached the contract—both quintessential state law claims—because both claims implicate

substantial questions of federal law and satisfy the inquiry set forth in *Grable*, which *Gunn*

distilled into four factors.  This argument must be resolved by an analysis of each claim to

determine if it "necessarily raise[s] a stated federal issue, actually disputed and substantial,

which a federal forum may entertain without disturbing any congressionally approved balance of

federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

### 1. Count I: Fiduciary Duty Claim

   The Community Foundation contends that the allegation that it had a fiduciary

duty to MobilizeGreen is based on allegations that the Community Foundation was entrusted to

manage money "belonging to" MobilizeGreen.  *See* Opp'n at 14-15 (citing Compl. ¶¶ 2, 18, 20,

29, 105).  From this starting point, the Community Foundation argues that its alleged breach of

fiduciary duty turns on whether MobilizeGreen had a valid claim to "ownership" of Forest

Service funds intended for its performance on the Internship Project, which necessarily implicate

regulations governing federal financial awards.  *See* Opp'n at 15.  The Community Foundation

further argues that these allegations assert a substantial, disputed question of federal law.  In

response, MobilizeGreen argues that a fiduciary relationship existed between the parties "by

virtue of the facts and circumstances of their relationship" and not by federal law or regulation.

Mot. to Remand at 9.  MobilizeGreen emphasizes that the Community Foundation acted only as

fiscal sponsor for MobilizeGreen and that it is "axiomatic that fiscal sponsors have a fiduciary

duty to the non-profits they sponsor."  *Id.* at 9-10.

       "Whether a fiduciary relationship exists is a fact-intensive question, and the fact-

finder must consider the nature of the relationship, the promises made, the type of services or

advice given and the legitimate expectations of the parties."  *Millennium Square Residential*

*Ass'n v. 2200 M Street LLC*, 952 F. Supp. 2d 234, 248-49 (D.D.C. 2013) (internal quotation

marks and citation omitted).[7]  "Fiduciary relationships arise when parties develop a certain

amount of trust between themselves." *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 49

(D.D.C. 2012).

       By focusing exclusively on whether MobilizeGreen "owned" funds disbursed by

the Forest Service, the Community Foundation ignores the Complaint's additional factual

allegations that, if proved, could enable a fact-finder to conclude that a fiduciary relationship

existed between the parties irrespective of federal actors.  In particular, the Complaint alleges

that the Community Foundation served as fiscal sponsor and that "fiscal sponsorships by their

nature are relationships of good faith, demanding trust and confidence."  Compl. ¶¶ 20, 21.

---

[7] The Community Foundation does not dispute application of District of Columbia law.

These broader allegations of a fiduciary relationship are not dependent on whether MobilizeGreen "owned" Forest Service funds disbursed to the Community Foundation. The Coutr finds that the alleged fiduciary relationship does not "necessarily depend[] on resolution of a substantial question of federal law" and does not provide a basis for federal jurisdiction under 28 U.S.C. § 1331. *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010).

### 2. Count IV: Breach of Contract Claim

The Complaint alleges that the Sponsor Agreement "constituted a valid and enforceable contract under which the Foundation promised to allow MobilizeGreen to transfer to another fiscal sponsor and manage MobilizeGreen's Project Funds." Compl. ¶ 121. The Complaint further alleges that the Community Foundation breached the Sponsor Agreement by, *inter alia*, failing to transfer the Internship Project to MobilizeGreen's new fiscal sponsor, Social and Environmental Entrepreneurs. *Id.* ¶¶ 26, 123. The Community Foundation argues that whether the transfer provision in the Sponsor Agreement was valid and enforceable necessarily raises a substantial and disputed question of federal law and regulation. It cites the Anti-Assignment Act, 41 U.S.C. § 6305, which provides that "[t]he party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to any party," and a Department of Agriculture regulation, which requires a recipient to obtain prior approval from the Forest Service for the "transfer or contracting out of any work under an award," 7 C.F.R. § 3019.25. Based on these authorities, the Community Foundation argues impossibility of performance due to federal law. MobilizeGreen responds that the Community Foundation has merely raised a federal defense, which cannot provide a basis for removal. MobilizeGreen is right.

The Community Foundation cites *Grable & Sons Metal Products*, which involved claims of title to land obtained at a federal tax sale; the only disputed issue was a question of federal law that constituted an essential element of the plaintiff's state law claim:

> Grable's state complaint must specify "the facts establishing the superiority of [its] claim," Mich. Ct. Rule 3.411(B)(2)(c) (West 2005), and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case.

*Grable*, 545 U.S. at 314-15.  Under D.C. law, a plaintiff alleging breach of contract must establish four elements: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co.v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  To prevail on its breach of contract claim, MobilizeGreen must show that the transfer provision of the Sponsor Agreement was a valid clause.  The Community Foundation contends that the enforceability of the transfer provision depends on whether the Anti-Assignment Act and the Department of Agriculture regulation render it void.

The Department of Agriculture regulation, which by its terms anticipates the possibility of a transfer, does not appear to be so forbidding.  *See* 7 C.F.R. § 3019.25 ("[R]ecipients shall request prior approvals from Federal awarding agencies for [the] . . . transfer or contracting out of any work under an award.").  The Community Foundation could have, in good faith, asked to transfer the Forest Service grant to MobilizeGreen's new fiscal sponsor.

The Anti-Assignment Act generally prohibits a contracting party from transferring a government contract to another party.  *See* 41 U.S.C. § 6305.  However, MobilizeGreen's breach of contract claim does not depend on the Community Foundation's

failure to transfer a government contract, *i.e.*, the Forest Service Agreement, to its new fiscal sponsor.  To the contrary, the Complaint alleges that to transfer the Internship Project to the new fiscal sponsor without harming the Internship Project, the Community Foundation only had to re-grant the funds to the new fiscal sponsor so that it could administer the Internship Project.  *See* Compl. ¶ 26.  This theory of recovery demonstrates that MobilizeGreen's breach of contract claim does not "necessarily" turn on analysis of the Anti-Assignment Act.  *See Mulcahey v. Columbia Organic Chems Co., Inc.*, 29 F.3d 148 (4th Cir. 1994) ("[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.").

Finally, the Community Foundation's reliance on *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) is also inapt.  *Bender* held that a breach of contract claim that is premised on an agreement based in federal law belongs in federal court:

> Although breach of contract is a state law cause of action, the agreements themselves are 'creatures of federal law,' in the sense of being intended to implement the scheme designed by 12 C.F.R. § 545.121. The [parties] entered into the agreements because federal law *requires* the execution of such contracts before legal fees can be advanced to defendant officers and directors. And the parties' legal duties turn almost entirely on the proper interpretation of that regulation.

*Id*. at 1131.  By contrast, federal law did not mandate that MobilizeGreen and the Community Foundation execute the Sponsor Agreement.  The Forest Service Agreement is a federal contract,[8] but it is not the focus of the dispute here.  Notably, the Community Foundation does

---

[8] The Interior and Related Appropriations Act of 1992 (Pub. L. 102-154) authorizes the Forest Service to enter into challenge cost-share agreements.  *See* FSH 1509.11 §§ 70.1, 71.2.

not cite the terms of the Forest Service Agreement or identify federal regulations that purportedly governed the Sponsor Agreement. *Bender* does not control here.

The Community Foundation's over-reading of the Department of Agriculture regulation and the Anti-Assignment Act is insufficient to demonstrate that the Complaint necessarily raises a substantial federal issue. The Court need not reach the remaining *Gunn* factors. *See Gunn*, 133 S. Ct. at 1064. Remand is appropriate because no federal question jurisdiction arises from MobilizeGreen's breach of contract claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that MobilizeGreen's Motion to Remand should be granted. This case will be remanded to the Superior Court for the District of Columbia. A memorializing Order accompanies this Opinion.

Date: April 29, 2015

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
